Of Counsel:

LUNG ROSE VOSS & WAGNILD

BRUCE D. VOSS            6532-0
Attorney at Law
A Law Corporation
MATTHEW C. SHANNON       9043-0
Attorney at Law
A Law Corporation
JAI W. KEEP-BARNES       10787-0
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Telephone: (808) 523-9000
Facsimile:  (808) 533-4184
Email:      *bvoss@legalhawaii.com*
            *mshannon@legalhawaii.com*
            *jkeep-barnes@legalhawaii.com*

Attorneys for Defendant
HICKAM COMMUNITIES LLC

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| LONNIE G. JABOUR and SONIA M. JABOUR, individually and on behalf of all other similarly situated,<br><br>　　　　　　　Plaintiffs,<br>　　vs.<br><br>HICKAM COMMUNITIES, LLC; and DOE Defendants 1-20,<br><br>　　　　　　　Defendants. | CIVIL NO. _____<br>(Other Civil Action)<br><br>DEFENDANT HICKAM COMMUNITIES LLC'S NOTICE OF REMOVAL; EXHIBITS A-C; CERTIFICATE OF SERVICE |

DEFENDANT HICKAM COMMUNITIES LLC'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1442, 1446, and 1453 Defendant Hickam Communities LLC ("Hickam"), by and through its attorneys, Lung Rose Voss & Wagnild, hereby provides notice of the removal of the above-captioned state court action, 1CCV-23-0001488, from the Circuit Court of the First Circuit, State of Hawaii to the United States District Court for the District of Hawaii.

I.    PROCEDURAL HISTORY

On November 17, 2023, Plaintiffs Lonnie G. Jabour and Sonia M. Jabour, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), initiated an action in State Court by filing the above-captioned Complaint ("Complaint") in the Circuit Court of the First Circuit, State of Hawaii, Civil No. 1CCV-23-0001488 (the "Class Action").  The Complaint alleges the following counts: (1) Negligence (Class Members against all Defendants); (2) Strict Liability (Class Members against all Defendants); (3) Medical Monitoring (Class Members against all Defendants); (4) Private Nuisance (Class Members against all Defendants); (5) Unfair and Deceptive Trade Practices (Subclass Members against all Defendants); (6) Breach of Implied Warranty of Habitability (Subclass Members against all Defendants); (7) Trespass (Subclass Members against all Defendants); (8) Breach of Contract (Subclass Members against all

Defendants); and (9) Violation of Hawaii Revised Statute Chapter 521 (Subclass Members against all Defendants).

With the Complaint, Plaintiffs also included a Summons and a Demand for Jury Trial.  <u>See</u> Exhibit A.  Plaintiffs served Hickam with their Complaint on December 5, 2023.  <u>See</u> Exhibit B.  Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b).

Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Hickam are attached hereto as Exhibits A-C.

## II.    <u>NOTICE TO ADVERSE PARTIES AND STATE COURT</u>

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice shall be promptly served on Plaintiffs' counsel of record and will be filed with the Circuit Court of the First Circuit, State of Hawaii.

## III.    <u>JURISDICTION AND VENUE</u>

As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1442, 1453(b), and 1332, and this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1332(d).

Venue lies in the United States District Court for the District of Hawaii pursuant to 28 U.S.C. §§ 1441(a) and 1446(a).

1251278.1

IV.    GROUNDS FOR REMOVAL

Plaintiffs' Complaint is properly removed to this Court because: (1) there is complete diversity of citizenship between the named Plaintiffs and Hickam, and the amount in controversy exceeds $75,000; (2) there is minimal diversity between Hickam and the class members, the aggregate amount in controversy for the class exceeds $5,000,000, and there are more than 100 members in the class; and (3) Hickam was acting as an officer of the United States (*i.e.*, the United States Navy) at all relevant times.

A.    Removal Is Warranted Pursuant To 28 U.S.C. § 1332(a)

28 U.S.C. 1441(b) allows for removal based on diversity of citizenship. Section 1332(a), in turn, provides in relevant part:

> (a)    The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and is between—
>
> (1)    citizens of different states; . . .

Both requirements—complete diversity and amount-in-controversy—are satisfied here.

1.     Complete diversity

a.     Hickam's citizenship

Hickam is the only named Defendant.[1]  Because Hickam is an LLC, its citizenship is based on the citizenship of its owners/members.  Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").  Further, "[i]f an owner/member is an LLC, its owners/members must also be identified, along with their citizenships."  Evan v. Fidelity Brokerage Servs. LLC, 202 WL 2045696, at *1 (D. Haw. 2020).

Here Hickam's sole member is HCH Sole Member LLC.  HCH Sole Member LLC is an LLC whose sole member is Lendlease (US) Public Partnerships Holdings LLC, which in turn is an LLC whose sole member is Lendlease Americas Inc.  Lendlease Americas Inc. is a Delaware corporation with its principal place of business in New York, making it a citizen of Delaware and New York.  Johnson, 437 F.3d at 899 ("[A] corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated.").  Thus, because Hickam's citizenship under 28 U.S.C. § 1332(a) is

---

[1] Although Plaintiffs sued "Doe Defendants 1-20," "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b)(2).

based on the citizenship of its members, Hickam is a citizen of Delaware and New York for purposes of diversity jurisdiction.  See Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 942 (S. D. Cal. 2007) ("A limited liability company is a citizen of every state in which its owners are citizens.") (citing Johnson, 437 F.3d. at 899 (2006)).

b.    The named Plaintiffs' citizenship

The citizenship of natural persons that are citizens of the United States is determined by their state of domicile.  Adams v. W Marine Products, Inc., 958 F.3d 1216, 1221 (9th Cir. 2020).  "One's domicile is her 'permanent home' – that is, where (i) [they] reside, (ii) 'with the intention to remain or to which [they] intend[] to return.'"  Id. (quoting Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)).  "At minimum, a person's residence constitutes some evidence of domicile."  Id. (citing Mondragon v. Capital One Auto Fin., 736 F.3d 880, 886 (9th Cir. 2013)).  And "[a] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change."  Id. (quoting Mondragon, 736 F.3d at 885 (9th Cir. 2013)).

Here, the Complaint does not specify the citizenship of the named Plaintiffs. However, the Complaint alleges that at all relevant times, each of the named Plaintiffs "resided in, and paid rent for, a housing unit in the City and County of

Honolulu, Hawaii[.]"  Exhibit A, at p. 3, ¶¶ 5-6.  Because the named Plaintiffs resided in the City and County of Honolulu, Hawaii at all relevant times, they may be considered citizens of the State of Hawaii unless and until it is rebutted with sufficient evidence of a change.

Moreover, based on Hickam's own investigation, it appears neither of the named Plaintiffs reside in, or are citizens of, Delaware or New York.

Complete diversity is therefore established because Hickam is a citizen of the State of New York and the State of Delaware, and the named Plaintiffs are citizens of the State of Hawaii (or, at least, are not citizens of New York or Delaware).

>    2.    The amount in controversy exceeds $75,000

Hickam is not required to submit evidence to establish that the amount in controversy requirement has been met.  See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84 (2014).  Rather, at this stage, it is enough if Hickam's notice of removal "contain[s] plausible allegations of the jurisdictional elements." Acad. of Country Music v. Cont'l Cas. Co., 991 F.3d 1059, 1069 (9th Cir. 2021).

As alleged in their Complaint, Plaintiffs seek general, special, treble, consequential and punitive damages for, among other claims, damage to and loss of personal property, overpayment for rent and services, renter's insurance

1251278.1

policies, real estate sales commissions, personal injuries, and ongoing and periodic

medical monitoring.  <u>See</u> Exhibit A, at ¶¶ 52-54, 61, 67, 71, 84, 87, 91, 95-96, 100-

101, 103, 111-113, and pp. 30-31.  In addition, Plaintiffs request their reasonable

attorneys' fees, presumably under Hawaii Revised Statutes § 607-14 and Hawaii

Revised Statutes § 480-2 (among other unspecified grounds).  <u>See id.</u>, at ¶¶ 51, 54,

61, 87, 96, 102-103, 110, 113, and p. 30.  Given the broad scope of Plaintiffs'

alleged damages, the $75,000 amount in controversy requirement is met.

Awards from cases involving exposure to other alleged toxic substances are

instructive for purposes of establishing the amounts Plaintiffs have placed in

controversy here.  For example, in <u>In re Hawaii Fed. Asbestos Cases</u>, two of the six

plaintiffs were awarded general damages in the amount of $85,000 and $105,000,

respectively, for alleged exposure to asbestos.  734 F. Supp. 1563, 1571 (D. Haw.

1990).  This was exclusive of their special damages, as well as the treble and

punitive damages Plaintiffs seek here.  <u>Id.</u>  Other asbestos cases have similarly

resulted in awards satisfying the $75,000 amount in controversy requirement.  <u>See</u>,

<u>e.g.</u>, <u>Norfolk & Western Ry. V. Ayers</u>, 538 U.S. 135, 144 (2003) (acknowledging,

but not ruling on the reasonableness of, a jury award for each asbestos claimant

ranging from $770,000 to $1.2 million); <u>see also</u> <u>Cain v. Pittsburgh Corning Corp</u>,

1992 U.S. App. LEXIS 8568 (9th Cir. 1992)[2] (affirming a total judgment of $3,366,807.91, inclusive of general and special damages and prejudgment interest, for injuries arising from asbestos exposure).

At a minimum, the above cases demonstrate that it is plausible that the named Plaintiffs have placed at least $75,000 in controversy as a result of their claims arising from alleged exposure to contaminated water.

This holds particularly true given Plaintiffs' request for treble and punitive damages. In considering awards for punitive damages, the Ninth Circuit has: (1) affirmed a 28 to 1 ratio of punitive to compensatory damages, thereby upholding a $1 million punitive damages award; (2) reduced a $4.5 million punitive damages award to $500,000, thereby approving a 10 to 1 ratio; and (3) affirmed a $2.6 million punitive damages award, thereby upholding a 7 to 1 ratio. See, e.g., Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 422 F.3d 949, 954-58 (9th Cir. 2005) (providing a summary of punitive damage awards). The Ninth Circuit has also acknowledged that it is not aware of any Supreme Court or Ninth Circuit case that had disapproved of a single-digit ratio between punitive and compensatory damages. Zhang v. Am. Gem Seafoods,

---

[2] Pursuant to 9th Cir. R. 36-3(c)(ii), this unpublished disposition is only being cited to for factual purposes to note a jury award for injuries arising from exposure to a toxic substance.

Inc., 339 F.3d 1020, 1044 (9th Cir. 2003) ("We are aware of no Supreme Court or

Ninth Circuit case disapproving of a single-digit ratio between punitive and

compensatory damages, and we decline to extend the law in this case.").

Importantly, Plaintiffs have explicitly claimed overpayment of rent.

Plaintiffs are residents of the same unit.  At the time their lease was executed, their

monthly rental rate was $3,812.  This means that if Plaintiffs were to claim a mere

three months of overpaid rent, they would be seeking $11,436; this amount is

exclusive of Plaintiffs' other requested damages and attorneys' fees.  If this amount

was trebled, it would result in a compensatory damages award of $34,308.  Using a

conservative punitive damages ratio of 4 to 1, Plaintiffs could also be awarded up

to $137,232 in punitive damages.  When adding Plaintiffs' other claimed damages,

such as medical monitoring, special damages, and request for attorneys' fees, it is

more than plausible that the $75,000 amount in controversy requirement is

satisfied.

      B.    <u>Class Action Fairness Act</u>

This is a civil Class Action which Hickam may also remove to this Court

pursuant to Class Action Fairness Act ("CAFA").  Pursuant to 28 U.S.C. § 1453 –

Removal of Class Actions:

> (b) In General.  A class action may be removed to a district court of
> the United States in accordance with section 1446 (Except that the 1-
> year limitation under section 1446(c)(1) shall not apply), without

10

regard to whether any defendant is a citizen for the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

In considering 28 U.S.C. § 1453(b), the United States Supreme Court affirmed that the "CAFA also includes a removal provision specific to class actions." Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746-47 (2019).

Removal of this Class Action is warranted pursuant to 28 U.S.C. §§ 1453(b) and 1332(d). More specifically, this Court has jurisdiction over this Class Action because: (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; (2) a member of the class of plaintiffs is a citizen of a state different from Hickam; and (3) the number of all proposed plaintiff class members in the aggregate is more than 100. As the foregoing pre-requisites are met, any party that seeks remand "bears the burden to prove an exception to CAFA's jurisdiction." Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021-22 (9th Cir. Feb. 22, 2007).

      1.    The amount in controversy exceeds the sum or value of $5 million

First, it is plausible that the amount in controversy in this Class Action exceeds the sum or value of $5 million. To determine whether the amount in controversy threshold has been met, the claims of the individual class members are aggregated, exclusive of interest and costs but inclusive of punitive damages and

attorneys' fees under a fee-shifting statute or contract.  See, e.g., Fritsch v. Swift

Transp. Co. of Ariz., LLC, 899 F.3d 785, 793 (9th Cir. 2018); see also 28 U.S.C. §

1332(d)(6).  As described above, Plaintiffs seek general, special, treble,

consequential and punitive damages for, among other claims, damage to and loss

of personal property, overpayment for rent and services, renter's insurance

policies, real estate sales commissions, personal injuries, and ongoing and periodic

medical monitoring.  See Exhibit A, at ¶¶ 52-54, 61, 67, 71, 84, 87, 91, 95-96, 100-

101, 103, 111-113, and pp. 30-31.  In addition, Plaintiffs request their reasonable

attorneys' fees, presumably under Hawaii Revised Statutes § 607-14 and Hawaii

Revised Statutes § 480-2 (among other unspecified grounds). See id., at ¶¶ 51, 54,

61, 87, 96, 102-103, 110, 113, and p. 30.

 In the aggregate, the proposed class of well over 100 Plaintiffs satisfies the

$5 million amount in controversy threshold.  Each individual class member would

need to claim, at most, $50,000.  As established above, given the broad scope of

damages being requested, including treble and punitive damages and Plaintiffs'

request for attorneys' fees, it is plausible that each Plaintiff of the proposed class

has placed more than $50,000 in controversy.  See supra, at Section IV(A)(2)

(establishing that the named Plaintiffs have each placed at least $75,000 in

controversy).

Further, Plaintiffs allege and request that Hickam be enjoined "from collecting rent from existing tenants while the water remains contaminated and unsafe to use[.]"  Exhibit A, at p. 31.  Plaintiffs also allege and request that Hickam be enjoined "from entering into any new leases for residential property until [Hickam] adequately address[es] the substantial water contamination that render the units uninhabitable[.]"  Id.  Hickam's costs to comply with these requested injunctions would also be aggregated and added to the amount in controversy.  See Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3D 785, 793 (9th Cir. 2018) ("Among other items, the amount in controversy includes . . . the costs of complying with an injunction . . .").  Using the named Plaintiffs' monthly rent of $3,812 as a benchmark, and reducing this amount to account for units with lower monthly rent, Hickam could be deprived of approximately $2,500 per month for all units within its community that were allegedly impacted by the Navy's contaminated water—approximately 2,495 units.  Applying the lower estimated monthly rent of $2,500, multiplied by the total number of the allegedly impacted units, results in approximately $6,237,500 per month in costs to comply with Plaintiffs' requested injunction.

Given the above, and considering Plaintiffs' additional request for ongoing and periodic medical monitoring for the entire class, it is more than plausible that the $5 million amount in controversy is satisfied.

13

2.    <u>Minimal diversity is satisfied</u>

In order to meet the minimal diversity requirements of 28 U.S.C. § 1332(d)(2), the party seeking removal must establish that any member of a class of plaintiffs is a citizen of a state different from any defendant.

a.    <u>Hickam's citizenship</u>

For purposes of determining minimal diversity under CAFA, 28 US.C. § 1332(d)(10) provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  It is generally accepted that Courts treat LLCs as "unincorporated associations" for purposes of CAFA.  <u>See</u>, <u>e.g.</u>, <u>Jack v. Ring LLC</u>, 553, F. Supp.3d 711, 714-715 (N.D. Cal. 2021); <u>see also</u> <u>Ramirez v. Carefusion Res., LLC</u>, 2019 U.S. Dist. LEXIS 112995, at *3-5 (S.D. Cal. July 1, 2019).

Hickam, an LLC, was formed in the State of Delaware.  It maintains its mailing address, headquarters, and business operations in the State of Tennessee. For purposes of removal under CAFA, Hickam is therefore a citizen of the State of Delaware and the State of Tennessee.

b.    <u>Class members' citizenship</u>

The Complaint does not provide the citizenship of its proposed class members.  Regardless, as established above and based on the current record, the named Plaintiffs are domiciled in, and may therefore be considered citizens of, the

14

State of Hawaii.  See supra, at Section IV(A)(1)(b).  Because the named Plaintiffs are citizens of the State of Hawaii, and Hickam is a citizen of the State of Delaware and the State of Tennessee, minimal diversity is satisfied because at least one of the proposed class members is a citizen of a state different from Hickam.

Even if Plaintiffs claim that they are not citizens of the State of Hawaii, minimal diversity is satisfied because it is more likely than not that at least **one** of the well-over-100-proposed-class-members is **not** a citizen of the State of Delaware or the State of Tennessee.

   3. The proposed class consists of more than 100 members

As alleged in the Complaint, "The Class consists of **well over 100 persons** . . .."  See Exhibit A, at p. 5, ¶ 15 (emphasis added).  Based upon Plaintiffs' express allegations, the number of members of all proposed plaintiff classes in the aggregate is greater than 100.  Accordingly, 28 U.S.C. § 1332(d)(5)(B) is satisfied.

C. Federal Officer

This Court also has original jurisdiction pursuant to 28 U.S.C. § 1442 (the "Federal Officer Removal Statute").  The Federal Officer Removal Statute allows for removal of an action against "any officer (or any person acting under that officer) of the Unites States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . ."  See 28 U.S.C. § 1442(a)(1).

To invoke § 1442(a)(1) removal, a defendant in a state court action "must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Fidelitad, Inc. v. Insitu, Inc., 904 F.3d 1095, 1109 (9th Cir. 2018) (quoting Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006)).  In this case, each of the foregoing elements are met.

          1.     Hickam is a "person" within the meaning of the statute

As an LLC, Hickam is considered a "person" for purposes of Section 1442. See  1 U.S.C. § 1 (including in the definition of "person" "corporations, companies, associations, [and] individuals"); see also Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017) (citing to 1 U.S.C. § 1, among other authority, for purposes of determining whether a party is a "person" within the meaning of Section 1442(a)(1)); St. Bernard Port, Harbor & Terminal Dist. V. Violet Dock Port, Inc., LLC, 809 F. Supp. 2d 524, 530 (E.D. La. 2011) (providing a summary of cases allowing limited liability companies to seek removal under Section 1442).  Accordingly, the first element of the Federal Officer Removal Statute is satisfied.

2.    There is a causal nexus between Hickam's actions, taken
<u>pursuant to a federal officer's directions, and Plaintiffs' claims</u>

In this case, the causal nexus requirement under the Federal Officer

Removal Statute is met because the government exerted some guidance or control

over Hickam's actions and because Hickam engages in "an effort to *assist*, or to

help *carry out*, the duties or tasks of the federal superior."  <u>See</u> <u>Watson v. Philip</u>

<u>Morris Cos.</u>, 551 U.S. 142, 151-52 (2007).  The United States Supreme Court has

emphasized that, "The words 'acting under' [in the Federal Officer Removal

Statute] are broad, and this Court has made clear that the statute must be 'liberally

construed.'"  <u>See</u> <u>id.</u>, at p. 147.  To meet this requirement, a defendant's conduct

need only "relat[e] to any act under color" of a federal office.  <u>See</u> 28 U.S.C. §

1442(a)(1).  The Ninth Circuit Court of Appeals has affirmed that, "[T]he hurdle

erected by [the causal-connection] requirement is quite low[,]" and has further

described this prong as having a "low bar."  <u>See</u> <u>Goncalves</u>, 865 F.3d at 1245 (9th

Cir. 2017) (alterations in original and internal quote omitted).

Here, Plaintiffs' Complaint explicitly alleges the following:

- "Defendants manage and lease residential housing in the City & County

    of Honolulu, Hawaii **pursuant to agreements with the Navy**."  Exhibit

    A, at p. 12, ¶ 31 (emphasis added).

- "The public-private venture [between Hickam and the Navy] also includes the sourcing of potable water sources from **a Navy-operated water system** . . .." Id., at p. 12, ¶ 32 (emphasis added).

- "[A]ll members [of the proposed class] have suffered similar injuries and damages . . . such as exposure to unsafe drinking water, property damage from fuel-contaminated water, and minor physical harm with risk of future physical harm." Id., at p. 6, ¶ 15.

Plaintiffs further allege that their injuries and damages were a result of "Defendant Hickam acquir[ing] this contaminated water **from a Navy-operated water system** that was affected by fuel spills and/or leaks attributable to the Red Hill Bulk Fuel Storage facility ["Red Hill"]] . . . a field-constructed underground storage tank system . . . **which is owned and operated by the U.S. Department of the Navy**." Id., at pp. 2-3, ¶ 4 (emphasis added).

Based on the allegations of the Complaint, there is no dispute that the Navy owns and operates Red Hill **and** the water system that Plaintiffs claim was contaminated, and, as a result, caused their alleged injuries and damages. Because Plaintiffs' Complaint arises entirely over allegations that a leak from Red Hill contaminated the Navy's Water system, to the extent Hickam is even implicated by Plaintiffs' claims, it can only be in Hickam's capacity as an officer or agent of the United States Navy. This is because the Navy exercised complete control over the

18

quality of the water, the information shared with Hickam regarding the water, and Hickam's ability to provide the water that Plaintiffs now complain of.  Simply put, to the extent that Plaintiffs are alleging that Hickam supplied, and is therefore responsible for, the Navy's water, Hickam was necessarily only acting in its capacity as an officer or agent of the Navy.  Accordingly, the second element of the Federal Officer Removal Statute is satisfied.

### 3.    Hickam has a colorable federal defense

In order to satisfy the final element of the Federal Officer Removal Statute, Hickam is not required to prove that it will prevail on a federal defense, or even that it is meritorious; rather, Hickam is only required to demonstrate that it is colorable.  See Thompson v. Crane Co., 2012 U.S. Dist. LEXIS 53755, *55-57 (D. Haw. April 17, 2012); see also Mesa v. California, 489 U.S. 121, 129 (1989).  In this Class Action, Hickam has a colorable federal defense.

Based upon the allegations of the Complaint, Hickam has the colorable federal defense of derivative sovereign immunity (also known as Yearsley immunity).  More specifically, "government [c]ontractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States."  Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 166 (2016) (alteration in original) (quoting Brady v. Roosevelt S. S. Co., 317 U.S. 575, 583 (1943)).  Federal government contractors are entitled to immunity when they act

1251278.1

pursuant to authority "validly conferred" by the federal government.  Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 167 (2016) (citing Yearsley v. W.A. Ross Constr. Co., 309 U.S. 18, 20-21 (1940)).  Under Yearsley, a government contractor enjoys derivative sovereign immunity from suit if "(1) the government authorized the contractor's actions and (2) the government validly conferred that authorization, meaning it acted within its constitutional power." Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 646 (4th Cir. 2018).

The United States authorized Hickam's actions.  In this Class Action, Plaintiffs' Complaint explicitly alleges that Hickam, among others, "manage and lease residential housing in the City & County of Honolulu Hawaii pursuant to agreements with the Navy."  Exhibit A, at p. 12, ¶ 31.  The Complaint further alleges that, "Th[is] public-private venture also includes the sourcing of potable water sources from a Navy-operated water system[.]"  Id., at p. 12, ¶ 32.  Plaintiffs generally assert that they suffered injuries from water that was under the care, custody, and control of the Navy.  See, e.g., Exhibit A, at pp. 2-3, ¶ 4 ("Defendant Hickam acquired this contaminated water from a Navy-Operated water system that was affected by fuel spills and/or leaks attributable to the Red Hill Bulk-Fuel Storage Facility . . . a field-constructed underground storage tank system . . . which is owned and operated by the U.S. Department of the Navy[.]").  As set forth in the Complaint, to the extent Plaintiffs are claiming that Hickam is responsible for the

1251278.1

Navy's water system that was allegedly contaminated by fuel from the Navy's fuel storage facility, Plaintiffs' claims are being asserted against Hickam in its capacity as a government contractor "pursuant to agreements with the Navy." See id., at p. 12, ¶ 33.

The United States also validly conferred the authority in question on Hickam. The Military Housing Privatization Initiative is a constitutionally valid statute that enables the Department of Defense to contract with private companies to own and operate housing on military installations. See generally 10 U.S.C. ch. 169.

At a minimum, this establishes that Hickam has the colorable federal defense of derivative sovereign immunity. Accordingly, the final element under the Federal Officer Removal Statute is satisfied and this Court has original jurisdiction over the Class Action pursuant to 28 U.S.C. § 1442.

V.    CONCLUSION

By removing this action to this Court, Hickam does not waive any defenses, objections, or motions available under state and/or federal law. Hickam expressly reserves its right to move for dismissal of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or any other applicable rule.

21

WHEREFORE, Hickam respectfully removes this action from the Circuit Court of the First Circuit, State of Hawaii, as Civil No. 1CCV-23-0001488, to the United States District Court for the District of Hawaii.

DATED:  Honolulu, Hawaii, January 4, 2024.

/s/ Jai W. Keep-Barnes
BRUCE D. VOSS
MATTHEW C. SHANNON
JAI W KEEP-BARNES

Attorneys for Defendant
HICKAM COMMUNITIES LLC

1251278.1