UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LONNIE G. JABOUR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND SONIA M. JABOUR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>          Plaintiffs,<br><br>     vs.<br><br>HICKAM COMMUNITIES, LLC,  DOE DEFENDANTS 1-20,<br><br>          Defendants. | CIV. NO. 24-00001 LEK-KJM |

**ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER OF REMAND**

On February 5, 2024, Plaintiffs Lonnie G. Jabour ("Lonnie Jabour") and Sonia M. Jabour ("Sonia Jabour" and collectively "the Jabours") filed their Motion for an Order of Remand ("Motion"). [Dkt. no. 11.] Defendant Hickam Communities LLC ("Hickam Communities") filed its memorandum in opposition on March 8, 2024, and the Jabours filed their reply memorandum on March 15, 2024. [Dkt. nos. 14, 15.] This matter came on for hearing on March 29, 2024.[1] The Jabours' Motion is hereby denied

---

[1] The Jabours' Motion was heard with the Motion for an Order of Remand filed by Plaintiffs Roman C. Martin and Danielle M. Freire on February 5, 2024. See Martin et al. v. Island Palm Cmtys., LLC, CV 24-00006 LEK-KJM, dkt. no. 11. That motion is addressed in a separate order.

because the case properly removed based on diversity jurisdiction and the Class Action Fairness Act of 2005.

## BACKGROUND

The Jabours filed their Complaint in the State of Hawai`i Circuit Court of the First Circuit ("state court") on November 17, 2023, and Hickam Communities removed the case to this district court on January 4, 2024. [Notice of Removal, filed 1/4/24 (dkt. no. 1), Exh. A (Complaint).]

The Jabours resided in a rental housing unit that "was owned, operated, managed and/or leased by" Hickam Communities. [Id. at ¶¶ 5-6.] According to the Complaint, Hickam Communities is a Hawai`i limited liability company ("LLC"). [Id. at ¶ 7.] Hickam Communities "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i pursuant to agreements with" the United States Department of the Navy ("the Navy"). [Id. at ¶ 31.] These agreements are part of

> a public-private venture to make productive use of residential housing previously utilized as a military housing community. Under the public-private venture, federal lands are leased to [Hickam Communities] who then lease[s] residences to private consumers, including the [Jabours]. The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to [Hickam Communities]' control.

[Id. at ¶ 32.] Under the leases that it entered into with its tenants, Hickam Communities had a duty to provide potable water

to the tenants, and the tenants had the duty to pay for the utilities included with the leased homes. [Id. at ¶¶ 33-34.]

The Jabours argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Hickam Communities sold to them as part of the utilities included in the lease of their home. See id. at ¶ 4. The Jabours allege that, because of the contamination of the water, they "have been constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

On November 20, 2021, the Navy reported that almost 14,000 gallons of a mixture of fuel and water was released from Red Hill's fire suppression system. [Id. at ¶ 26.] The State of Hawai`i Department of Health ("DOH") found that "the November 2021 fuel release 'caused the Red Hill Shaft, a drinking-water source for the U.S. military, to be seriously contaminated with fuel.'" [Id. at ¶ 26 & n.19 (emphasis omitted) (quoting DOH Hearings Officer's Proposed Decision and Order, Findings of Fact, and Conclusions of Law, dated 12/27/21 ("12/27/21 DOH FOF/COL") at ¶ 36).[2]] The DOH found that "'[t]he water

_____

[2] The 12/27/21 DOH FOF/COL was issued in the contested case brought by the Navy to challenge portions of DOH's December 6, 2021 emergency order. The proposed decision and order was

(. . . continued)

contamination was widespread and not unique to any one person.'" [Id. at ¶ 27.a (emphasis omitted).] In response to the November 2021 fuel release, the Red Hill Shaft, all tanks at Red Hill, the `Aiea-Hālawa Shaft, and three City and County of Honolulu Board of Water Supply ("BWS") wells were shut down. [Id. at ¶ 29.]

The Jabours argue that, because of prior fuel leaks/releases at Red Hill and because of Hickam Communities' relationship with the Navy, Hickam Communities knew or should have known about the risk of contamination to the water that it provided to the Jabours under their lease. Further, Hickam Communities failed to warn the Jabours about the risk that fuel leaks contaminated the water which was provided to their home. Hickam Communities did not test the water it provided to the Jabours to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Hickam Communities failed to warn its tenants in timely manner, which resulted in the Jabours using and drinking the contaminated

---

adopted, as amended, as DOH's final decision and order. See Wai Ola Alliance, et al. v. U.S. Dep't of the Navy, et al., CV 22-00272 LEK-RT ("Wai Ola"), Defendants' Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed 12/7/23 (dkt. no. 102), Exh. D (12/6/21 emergency order), Exh. E (DOH final decision and order); Wai Ola, plaintiffs' request for judicial notice, filed 12/22/23 (dkt. no. 108), Exh. A (12/27/21 DOH FOF/COL).

water. [Id. at ¶¶ 36-37.] The Jabours allege the water crisis is ongoing because the water is still being tested to determine if it is safe for human consumption. [Id. at ¶ 38.] The Jabours allege that, as a result of Hickam Communities' conduct, they have "suffered economic injury and damages, including but not limited to lease termination fees, relocation expenses, rent, and the loss of personal possessions." [Id. at ¶ 41.] In addition, the Jabours allege their damages "include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention, damage to personal property, and property management and maintenance services." Id. at ¶ 53; see also id. at ¶¶ 100, 112 (similar).

The Jabours are attempting to pursue their case as a class action brought on behalf of:

> All persons who are citizens of Hawai`i at the time of filing of this suit, and who, on or after November 20, 2021, reside or have resided in a housing unit entitled to receive uncontaminated potable water sold or distributed by [Hickam Communities] in housing units owned, leased or operated by Hickam and who, for some period of time since November 20, 2021, did not receive such uncontaminated potable water [("the Class")].

[Id. at ¶ 11.] The Class does not include "[i]ndividuals suffering from physical injuries severe enough to require professional medical assistance." [Id.] The Jabours also propose

a subclass consisting of: "All persons in the above Class who entered a lease contract with Defendant Hickam [Communities], and/or made payments for or towards lease rent on a housing unit entitled to receive uncontaminated potable water sold or distributed by Defendant Hickam [Communities ('the Subclass')]." [Id. at ¶ 12.]

The Jabours allege the requirements of numerosity, commonality, typicality, and adequacy are met as to the Class and the Subclass. See id. at ¶¶ 13-16. They also allege Hickam Communities' conduct is generally applicable to the Class, and the common issues related to liability and causation dominate over the individual issues of extent of economic harm. See id. at ¶¶ 17-19.

The Jabours assert the following claims: a negligence claim by the Class ("Count I"); a strict liability claim by the Class ("Count II"); a claim by the Class alleging Hickam Communities has a duty to provide medical monitoring for conditions that may develop because of the contaminated water ("Count III"); a private nuisance claim by the Class ("Count IV"); an unfair and deceptive trade practices claim by the Subclass, pursuant to Hawai`i Revised Statutes Section 480-2 ("Count V"); a breach of the implied warranty of habitability claim by the Subclass ("Count VI"); a trespass claim by the Subclass ("Count VII"); a breach of contract claim by the

6

Subclass ("Count VIII"); and a claim by the Subclass alleging violations of the Landlord Tenant Code, Hawai`i Revised Statutes Chapter 521 ("Count XI"). [Id. at pgs. 16-29.] The Jabours seek: class and subclass certification; general, special, and consequential damages, as well as treble and punitive damages; a medical monitoring program; attorneys' fees and costs; disgorgement of profits; prejudgment interest; injunctive relief; and any other appropriate relief. [Id. at pgs. 30-31.]

Hickam Communities removed this case, arguing jurisdiction exists pursuant to: Title 28 United States Code Section 1332(a); the Class Action Fairness Act of 2005 ("CAFA"), Title 28 United States Code Section 1332(d); and the federal officer removal statute, Title 28 United States Code Section 1442. [Notice of Removal at § III.] Hickam Communities argues: 1) there is diversity of citizenship between the Jabours and Hickam Communities, and the amount in controversy exceeds $75,000; 2) there is minimal diversity between the Class and Hickam Communities, there are more than 100 members in the Class, and the aggregate amount in controversy exceeds $5 million; and 3) Hickam Communities was acting under a federal officer, i.e., the Navy. [Notice of Removal at pgs. 4-21.]

In the instant Motion, the Jabours argue that the case must be remanded because neither diversity jurisdiction, CAFA jurisdiction, nor federal officer removal jurisdiction exists in

this case. [Motion at PageID.251.] As to diversity jurisdiction, the Jabours argue Hickam Communities has not established that the amount in controversy exceeds $75,000 as to each plaintiff, and the Jabours' claims cannot be aggregated to satisfy the amount in controversy. [Motion, Mem. in Supp. at 5-6 (quoting Urbino v. Orkin Servs. of Cal., 726 F.3d 1118, 1122 (9th Cir. 2013) (quoting Snyder v. Harris, 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969)).] The Jabours argue jurisdiction does not exist under CAFA because minimal diversity of citizenship is lacking. [Id. at 14-15.] Finally, the Jabours argue that, under Lake v. Ohana Military Communities, LLC, 14 F.4th 993 (9th Cir. 2021), Hickam Communities cannot show that it is a federal officer for purposes of federal officer removal jurisdiction. The Jabours also point out that other judges in this district court have applied the Lake analysis and rejected federal officer removal arguments in similar Red Hill cases. [Id. at 20-21 (citing Lethgo v. CP IV Waterfront, LLC, No. 22-00052 JAO-WRP, 2022 U.S. Dist. LEXIS 107381, at *16 (D. Haw. June 16, 2022)).[3]] The Jabours therefore urge this Court to deny the Motion and to remand this case to the state court. In the alternative, they ask this Court to defer ruling on the Motion

---

[3] Lethgo, 2022 U.S. Dist. LEXIS 107381, is also available at 2022 WL 2177125.

until after they have had the opportunity to conduct
jurisdictional discovery. [Id. at 24.]

**STANDARDS**

"A civil case commenced in state court may, as a
general matter, be removed by the defendant to federal district
court, if the case could have been brought there originally."
Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005); see
also 28 U.S.C. § 1441(a).

> "A federal court is presumed to lack
> jurisdiction in a particular case unless the
> contrary affirmatively appears." Stock W., Inc.
> v. Confederated Tribes of the Colville Rsrv., 873
> F.2d 1221, 1225 (9th Cir. 1989). "Removal and
> subject matter jurisdiction statutes are
> 'strictly construed . . . .'" Hawaii ex rel.
> Louie v. HSBC Bank Nev., N.A., 761 F.3d 1027,
> 1034 (9th Cir. 2014) (quoting Luther v.
> Countrywide Home Loans Servicing LP, 533 F.3d
> 1031, 1034 (9th Cir. 2008)).
>
> Generally, a "defendant seeking removal has
> the burden to establish that removal is proper
> and any doubt is resolved against removability."
> Id. (quoting Luther, 533 F.3d at 1034). . . .

Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir.
2021) (first ellipsis in Lake).

I.   **Diversity Jurisdiction and CAFA**

One such basis for removal is diversity jurisdiction,
and one of the circumstances where diversity jurisdiction exists
is a suit between citizens of different states where the amount
in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1). In

addition, "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). Relevant to the instant case, minimal diversity means "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A).

> [T]here "is no antiremoval presumption attend[ing] cases invoking CAFA . . . .", Dart Cherokee Basin Operating Co., LLC v. Owens (Dart Cherokee), 574 U.S. 81, 89 (2014) (citing S. Rep. No. 109-14, at 43 (2005)), given that such a presumption would cut against "CAFA's primary objective: ensuring Federal court consideration of interstate cases of national importance." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (internal citation omitted).
>
> Nevertheless, removal still requires that the moving party carry "the burden of establishing removal." Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). . . .

Dunn v. SHC Servs., Inc., Case No. 1:21-cv-00744-NONE-SAB, 2021 WL 5122057, at *2 (E.D. Cal. Nov. 4, 2021) (some alterations in Dunn).

## II. **Federal Officer Removal Jurisdiction**

Title 28 United States Code Section 1442(a) states, in pertinent part:

> A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The Ninth Circuit has stated:

> The purpose of the federal officer removal statute is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties." Arizona v. Manypenny, 451 U.S. 232, 241, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981). The right of removal is "absolute for conduct performed under color of federal office," and the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Id. at 242, 101 S. Ct. 1657 (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)).
>
> An entity seeking removal under § 1442(a)(1) bears the burden of showing "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson Cty. v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)).

11

Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017). In performing this analysis, courts have a "duty to interpret Section 1442 broadly in favor of removal." Id. (citation and internal quotation marks omitted).

> Removal rights under § 1442 thus "are much broader than those under section 1441." Durham, 445 F.3d at 1253. For example, "suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Jefferson County v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999). And unlike garden-variety remand orders for lack of subject-matter jurisdiction or defects in removal procedure, which are not appealable, see Kircher v. Putnam Funds Tr., 547 U.S. 633, 640–41, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006) (discussing 28 U.S.C. § 1447(d)'s general preclusion of appellate review of remand orders), when (as here) removal relies on § 1442, a remand order for lack of subject-matter jurisdiction **is** appealable. See 28 U.S.C. § 1447(d).

DeFiore v. SOC LLC, 85 F.4th 546, 554 (9th Cir. 2023) (emphasis in original).

## DISCUSSION

I. **Diversity Jurisdiction**

A. **Diversity of Citizenship**

The Jabours propose to represent the Class, which is defined as consisting of persons who, *inter alia*, were citizens of Hawai`i at the time this action was filed. See Complaint at ¶ 11. Further, the Jabours have submitted a declaration by

Lonnie Jabour stating that "[i]n 2021 and 2022, and continuing up until after suit was filed on November 17, 2023, [they] were and are residents and citizens of Hawai`i." [Motion, Declaration of Lonnie G. Jabour ("Jabour Decl.") at ¶ 4.] This Court therefore concludes the Jabours are citizens of Hawai`i for purposes of diversity jurisdiction.

Because Hickam Communities is an LLC, for purposes of diversity jurisdiction, it "is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business." See Voltage Pictures, LLC v. Gussi, S.A. de C.V., 92 F.4th 815, 822 (9th Cir. 2024) (citation and quotation marks omitted). HCH Sole Member LLC is the only member of Hickam Communities, and Lendlease (US) Public Partnerships Holdings LLC is the only member of HCH Sole Member LLC. Lendlease Americas Inc. is the only member of Lendlease (US) Public Partnerships Holdings LLC. Lendlease Americas Inc. is a Delaware corporation with its principal place of business in New York. [Notice of Removal at pg. 5.] Thus, because Lendlease Americas Inc. is a citizen of Delaware and New York for purposes of diversity jurisdiction, see 28 U.S.C. § 1332(c)(1), this Court concludes that Hickam Communities is a citizen of Delaware and New York, and therefore there is diversity of citizenship between the Jabours and Hickam Communities.

**B.**   **Amount in Controversy**

The issue before this Court is whether the $75,000 amount in controversy requirement is satisfied.

> [W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . .
>
> If the plaintiff contests the defendant's allegation, [28 U.S.C.] § 1446(c)(2)(B) instructs: "[R]emoval . . . is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied. As the House Judiciary Committee Report on the JVCA observed:
>
>> "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies." H. R. Rep. No. 112-10, p. 16 (2011).

<u>Dart Cherokee Basin Operating Co. v. Owens</u>, 574 U.S. 81, 87–89 (2014) (some alterations in <u>Dart Cherokee</u>) (footnote omitted).

Subsequent Ninth Circuit cases noted that <u>Dart Cherokee</u> did not

14

establish a rule regarding the **procedure** for the presentation of evidence associated with a motion for remand. See Dunn, 2021 WL 5122057, at *6 (discussing Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199-1200 (9th Cir. 2015); Salter v. Quality Carriers, 974 F.3d 959, 964-65 (9th Cir. 2020); and Harris v. KM Indus., Inc., 980 F.3d 694, 700 (9th Cir. 2020)).

> "Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, 'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.'" [Chavez v. JPMorgan Chase & Co, 888 F.3d 413,] 416 [(9th Cir. 2018)] (quoting Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1121-22 (9th Cir. 2013)). "The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'" Id. (quoting Gonzales [v. CarMax Auto Superstores, LLC], 840 F.3d [644,] 648-49 [(9th Cir. 2016)]). "In assessing the amount in controversy, **we may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy.**" Id. But "[c]onclusory allegations as to the amount in controversy are insufficient." Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 774 (9th Cir. 2017) (quoting Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090-91 (9th Cir. 2003)).

Johnson v. Mid-Century Ins. Co., No. 23-35222, 2024 WL 702332, at *1 (9th Cir. Feb. 21, 2024) (some alterations in Johnson) (emphasis added). This Court will therefore consider both the

allegations of the Complaint and the evidence presented by the parties in connection with the instant Motion.

Lonnie Jabour estimates his losses as no more than $12,808. See Jabour Decl. at ¶ 13. This includes: $12,048 in rent paid during the period when their home was uninhabitable because of the contaminated water; [id. at ¶ 11;] the loss of their washing machine, valued at "no more than $600," because it "was rendered useless"; [id. at ¶ 12(1);] $60 in laundry expenses during the period that the government paid for their family to stay in a hotel; [id. at ¶ 12(2);] and $100 that the Jabours paid for renters' insurance during the period when they were unable to live in the covered home, [id. at ¶ 12(3)].

> Generally, the claims of multiple plaintiffs may not be aggregated for determining the amount in controversy. Gibson v. Chrysler Corp., 261 F.3d 927, 943 (9th Cir. 2001). There is an exception to this rule for plaintiffs who "unite to enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332, 335 (1969).

Johnson, 2024 WL 702332, at *2. Thus, Lonnie Jabour's claims and Sonia Jabour's claims for lost rent, loss of the use of their renters' insurance policy, and the loss of their washing machine can be aggregated in this case because the Jabours had "a common and undivided interest" in those items. See Snyder, 394 U.S. at 335.

16

The Jabours estimate the amount at issue in their medical monitoring claim to be no more than $2,000 per person because they argue this claim only seeks "simple measures like annual blood tests," which they estimate will cost $100 per year over a twenty-year period. See Motion, Mem. in Supp. at 8-9. Further, the Jabours state they are not seeking payment for the treatment of any conditions discovered during the monitoring. [Id. at 9.] Hickam Communities argues this grossly underestimates the value of the Jabours' medical monitoring claim. [Mem. in Opp. at 8-9.] However, a plaintiff is the master of his complaint, and he may choose to seek limited relief, even if another similarly situated plaintiff may arguably be able to obtain greater relief. Cf. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (citation omitted)). This Court therefore accepts the Jabours' representation that the amount at issue in their medical monitoring claim is approximately $2,000.

Treble damages are available for the Jabours' Chapter 480 claim. See Haw. Rev. Stat. § 480-13(a)(1), (b)(1). This would be approximately $38,424, *i.e.*, three times $12,808. Other claims, such as the Jabours' negligence claim, carry the possibility of an award of punitive damages. See Masaki v. Gen. Motors Corp., 71 Haw. 1, 10, 780 P.2d 566, 572 (1989). However, under Hawai`i law, a plaintiff cannot recover both treble damages and punitive damages for claims arising from the same act. Cieri v. Leticia Query Realty, Inc., 80 Hawai`i 54, 69, 905 P.2d 29, 44 (1995) (some alterations in Cieri). This Court therefore rejects Hickam Communities' argument that both punitive damages and treble damages can be considered in determining the amount in controversy. See Mem. in Opp. at 11-12.

In considering the amount of punitive damages at issue in case, the Jabours urge this Court to look to Suzuki v. Helicopter Consultants of Maui, Inc., CV 13-00575 JMS-KJM, which involved a helicopter crash that contaminated the plaintiff's property. The jury in that case awarded $36,050 in compensatory damages and $125,000 in punitive damages, a ratio of 3.47 to 1. [Motion, Mem. in Supp. at 10-11 (citing Motion, Declaration of James J. Bickerton ("Bickerton Decl."), Exh. 12 (Special Verdict Form filed in Suzuki on 11/16/16)).] This Court also finds instructive case law addressing the issue of whether an award of

18

punitive damages violates the Fifth Amendment Due Process Clause.

> The Supreme Court has explained that it is "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." State Farm [Mut. Auto. Ins. Co. v. Campbell], 538 U.S. [408,] 424, 123 S. Ct. 1513 [(2003)]. But, it has said, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Id. at 425, 123 S. Ct. 1513. While "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," these ratios are "instructive" not "binding." Id. Larger ratios are more likely to be warranted when "a particularly egregious act has resulted in only a small amount of economic damages." Id. (internal quotation marks and citation omitted). Conversely, when "compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." Id. In short, the punitive damages must be "reasonable and proportionate" to the harm and compensatory damages. Id.

Diaz v. Tesla, Inc., 598 F. Supp. 3d 809, 844 (N.D. Cal. 2022).

In the Notice of Removal, Hickam Communities argued "a conservative punitive damages ratio of 4 to 1" should be used to determine the amount in controversy. [Notice of Removal at pg. 10.] Having considered Suzuki, the due process case law, and the circumstances of this case, this Court concludes that a 4 to 1 ratio is appropriate in evaluating the amount in controversy for purposes of removal jurisdiction. This Court therefore finds that $51,232 in punitive damages ($12,808 times four) is at

issue in this case. Lonnie Jabour could potentially recover
$12,808 in compensatory damages and $51,232 in punitive damages,
or $64,040. Adding the $2,000 for the medical monitoring claim
brings the total to $66,040.

Awards of attorneys' fees are potentially available
the Jabours' breach of contract claims and their Chapter 480
claim. See Haw. Rev. Stat. § 607-14; Haw. Rev. Stat. § 480-
13(a)(1), (b)(1). The award of attorneys' fees for the breach of
contract claim would be limited to twenty-five percent of the
judgment in the breach of contract claim. See § 607-14. Based on
the parties' representations, that would appear to be $3,202 for
Lonnie Jabour. However, the award for the Chapter 480 claim is
limited to "reasonable attorney's fees." See § 480-13(a)(1),
(b)(1). The Jabours argue, without citing authority, that the
benchmark for a reasonable fee under Section 480-13 is twenty-
five percent. See, e.g., Motion, Mem. in Supp. at 13. This Court
rejects that argument because the Hawai`i Supreme Court has
stated, in reviewing the reasonableness of a Section 480-
13(b)(1) fee award, that "the amount of fees need not be
restricted to the amount of actual damages." Cieri, 80 Hawai`i
at 73, 905 P.2d at 48 (citation omitted).

Although Hickam Communities has not presented any
evidence regarding the amount of attorneys' fees at issue in
this case, based on this Court's knowledge of the prevailing

20

rates in the legal community and its familiarity with the amount of time involved in the litigation of claims similar to the Jabours' claims, this Court finds that more than $9,000 in attorneys' fees is at issue in Lonnie Jabour's Chapter 480 claim. This Court therefore finds that the amount in controversy requirement is met as to Lonnie Jabours' claims in this case, and this Court concludes that Hickam Communities properly removed this case based on diversity jurisdiction pursuant to Section 1332(a)(1). The Jabours' Motion is therefore denied.[4] In light of this ruling, the Jabours' challenges to Hickam Communities' removal based on CAFA and the federal officer removal statute are moot. However, this Court will address those arguments for the sake of completeness.

## II.  **CAFA**

Hickam Communities asserts the proposed Class has well over 100 members and the aggregate amount in controversy exceeds $5 million. [Notice of Removal at pg. 12.] The Jabours do not dispute those representations in the Motion. Thus, only CAFA's minimal diversity requirement and the home state exception to CAFA jurisdiction are at issue.

---

[4] The Jabours' request to conduct jurisdictional discovery before this Court rules on the Motion is also denied because this Court finds that jurisdictional discovery is not necessary in this case.

A.   __Hickam Communities' Citizenship__

For purposes of CAFA, "an unincorporated association [is] deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). This district court has stated:

> Although an LLC ordinarily shares the citizenships of all of its owners/members in diversity cases, see Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899, 902 (9th Cir. 2006), courts treat LLCs as unincorporated associations under CAFA, so they are citizens of the states under whose laws they are organized and the states where they have their principal places of business. See 28 U.S.C. § 1332(d)(10); Ramirez v. Carefusion Res., LLC, Case No.: 18-cv-2852-BEN-MSB, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) ("In the Ninth Circuit, whether an LLC is 'an unincorporated association' for CAFA purposes under § 1332(d)(10) remains an open question. Nonetheless, the Fourth Circuit" has "expressly held that an LLC is properly considered an 'unincorporated association' within the meaning of § 1332(d)(10)" and "most courts to consider the issue have reached the same conclusion, finding that § 1332(d)(10) applies to all types of non-corporate business entities." (citations omitted)); Jack v. Ring LLC, 553 F. Supp. 3d 711, 714-16 (N.D. Cal. 2021).

Lethgo v. CP IV Waterfront, LLC, CIVIL NO. 22-00052 JAO-WRP, 2022 WL 2177125, at *6 (D. Hawai`i June 16, 2022).

Interpreting the term "principal place of business" in Section 1332(c)(1), the United States Supreme Court held:

> the phrase "principal place of business" refers to the place where the corporation's high level officers direct, control, and coordinate the

22

> corporation's activities. Lower federal courts
> have often metaphorically called that place the
> corporation's "nerve center." See, *e.g.*,
> Wisconsin Knife Works v. National Metal Crafters,
> 781 F.2d 1280, 1282 (CA7 1986); Scot Typewriter
> Co. v. Underwood Corp., 170 F. Supp. 862, 865
> (SDNY 1959) (Weinfeld, J.). We believe that the
> "nerve center" will typically be found at a
> corporation's headquarters.

Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010). However, the

corporation's headquarters is only the nerve center when it "is

the actual center of direction, control, and coordination, . . .

and not simply an office where the corporation holds its board

meetings (for example, attended by directors and officers who

have traveled there for the occasion)." Id. at 93. Further, the

principal place of business or nerve center is a single place

"**within** a State. It is not the State itself." Id. (emphasis in

original).

In adopting the "nerve center" test, the Supreme Court

recognized that the test

> may in some cases produce results that seem to
> cut against the basic rationale for 28 U.S.C.
> § 1332. For example, if the bulk of a company's
> business activities visible to the public take
> place in New Jersey, while its top officers
> direct those activities just across the river in
> New York, the "principal place of business" is
> New York. One could argue that members of the
> public in New Jersey would be **less** likely to be
> prejudiced against the corporation than persons
> in New York — yet the corporation will still be
> entitled to remove a New Jersey state case to
> federal court. And note too that the same
> corporation would be unable to remove a New York
> state case to federal court, despite the New York

public's presumed prejudice against the
corporation.

Id. at 96 (emphasis in original) (citation omitted).

The Jabours argue Hickam Communities only operates in
Hawai`i. [Motion, Mem. in Supp. at 15.] They have submitted
evidence that Hickam Community Housing LLC registered to do
business in Hawai`i in 2003, listing a California address as the
mailing address for its principal office. See Bickerton Decl.,
Exh. 2 (Application for Certificate of Authority with a Delaware
certification that the entity was formed under Delaware law and
was in good standing in Delaware, filed 12/29/03 with State of
Hawai`i Department of Commerce and Consumer Affairs ("DCCA"),
Business Registration Division). Soon thereafter, Hickam
Community Housing LLC notified the DCCA that it was changing its
mailing and physical address to a Hawai`i address. See id.,
Exh. 3 (letter dated 3/25/04). Hickam Community Housing LLC
changed its name to Hickam Communities LLC in 2010. See id.,
Exh. 4 (Delaware certification, filed with the DCCA Business
Registration Division on 9/16/10). In 2015, Hickam Communities'
principal office was in Honolulu, and the nature of its business
was "TO ACQUIRE, OWN, HOLD, MANAGER, FINANCE, DEVELOP, OPERATE,
LEASE, IMPROVE, ALTER & DISPOSE OF CERTAIN PROPERTY." See id.,
Exh. 5 (Foreign Limited Liability Company Annual Report as of
10/1/15, received by the DCCA Business Registration Division

24

11/12/15) (emphasis in original). This information remained the
same in 2017. See id., Exh. 6 (Foreign Limited Liability Company
Annual Report as of 10/1/17, received by the DCCA Business
Registration Division 10/17/17).

        In 2018, Hickam Communities changed its mailing
address to a Tennessee address. See id., Exh. 7 (Foreign Limited
Liability Company Annual Report as of 10/1/18, received by the
DCCA Business Registration Division on 10/19/18). The Notice of
Removal asserts Hickam Communities has its headquarters and
business operations in Tennessee. [Notice of Removal at pg. 14.]
However, the Jabours argue Hickam Communities' website does not
mention Tennessee and provides a Honolulu address and a Hawai`i
telephone number. [Motion, Mem. in Supp. at 17 (citing Bickerton
Decl., Exh. 8 (screenshot of Contact Us page of Hickam
Communities' website)).] The Jabours point out that the address
on the website is the address that Hickam Communities listed
with the DCCA until 2018. [Id.]

        The Jabours also point out that Tennessee law requires
a foreign LLC doing business in Tennessee to have a certificate
of authority, but Hickam Communities does not have one. [Id.
(citing Tenn. Code § 48-246-301; Bickerton Decl., Exh. 10
(screenshot of Business Information Search, showing no records
found for Hickam Communities).] The Jabours argue the Tennessee
address listed on Exhibit 7 is the address of Lendlease (US)

25

Public Partnerships Holdings LLC. [Id. at 17-18 (citing Bickerton Decl., Exh. 11 (search results for the Tennessee address). As noted *supra* Discussion Section I.A, Hickam Communities' sole member is HCH Sole Member LLC, and the sole member of HCH Sole Member LLC is Lendlease (US) Public Partnerships Holdings LLC. Hickam Communities offers a printout of information regarding Hickam Communities from opencorporates.com, reflecting that Hickam Communities' mailing address and head office address are the Tennessee address that is reflected in the Jabours' exhibits. See Mem. in Opp., Declaration of Jai W. Keep-Barnes ("Keep-Barnes Decl."), Exh. B. Hickam Communities argues the fact that it has activities in Hawai`i is not dispositive; the key fact is that the activities are directed from Tennessee. [Mem. in Opp. at 16-17.]

Based on the exhibits submitted by the parties, this Court finds that Hickam Communities' principal office is in Tennessee. See Bickerton Decl., Exh. 7; Keep-Barnes Decl., Exh. B; see also Notice of Removal at pg. 14 (stating Hickam Communities is a citizen of Delaware and Tennessee for purposes of CAFA). As noted in Hertz, 559 U.S. at 96, the fact that Hickam Communities' most visible operations are in Hawai`i does not mean that its nerve center is in Hawai`i. This Court therefore concludes that, for purposes of CAFA, Hickam Communities is a citizen of Delaware and Tennessee.

26

B.   **The Class Members' Citizenship**

The Jabours assert that, based on the definition of the Class, all of the proposed Class members are Hawai`i citizens. [Motion, Mem. in Supp. at 14.] Because Hickam Communities does not challenge that representation, see generally Mem. in Opp. at 14-18, this Court concludes that, for purposes of CAFA, all of the proposed Class members are Hawai`i residents. Because Hickam Communities is a citizen of Delaware and Tennessee and all of the proposed Class members are Hawai`i citizens, minimal diversity exists for purposes of CAFA.

C.   **Exceptions**

> Notwithstanding CAFA's minimal diversity requirement, see 28 U.S.C. § 1332(d)(2)(A), there are two exceptions to CAFA jurisdiction: "(1) the local controversy exception and (2) the home state exception." Adams [v. W. Marine Prod., Inc.], 958 F.3d [1216,] 1220 [(9th Cir. 2020)]. The Ninth Circuit treats these non-jurisdictional exceptions as a form of abstention. See id. at 1223.

Lethgo, 2022 WL 2177125, at *6.

> "Once CAFA jurisdiction has been established, the burden falls on the party seeking remand . . . to show that an exception to CAFA jurisdiction applies." Adams, 958 F.3d at 1221 (citing 28 U.S.C. § 1332(d)(2), (d)(5)) (other citation omitted). The movant "must provide **some** facts in evidence from which the district court may make findings regarding class members' citizenship" to satisfy this burden. Id. (internal quotation marks and citation omitted); see also Mondragon v. Cap. One Auto Fin., 736 F.3d 880, 884 (9th Cir. 2013).

Id. at *7 (alteration and emphasis Lethgo).

> Pursuant to the local controversy exception, "a district court 'shall' decline to exercise jurisdiction when more than two-thirds of the putative class members are citizens of the state where the action was filed, the principal injuries occurred in that same state, and at least one significant defendant is a citizen of that state." [Adams, 958 F.3d] at 1220 (citing 28 U.S.C. § 1332(d)(4)(A)). The home state exception consists of mandatory and discretionary components:
>
> > Under the first, the district court "shall" decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (the "mandatory home state exception"). Under the second, a district court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" when more than one-third of the putative class, and the primary defendants, are citizens of the state where the action was originally filed. 28 U.S.C. § 1332(d)(3) (the "discretionary home state exception").
>
> Id. . . .

Id.

Because this Court has concluded that Hickam Communities is a citizen of Delaware and Tennessee for purposes of CAFA, the home state exception does not apply. This Court therefore concludes that Hickam Communities properly removed this case pursuant to CAFA.

## III. **Federal Officer Removal**

The first requirement for federal officer removal jurisdiction is satisfied because Hickam Communities is a "person" for purposes of Section 1442(a)(1). See Goncalves, 865 F.3d at 1244.

The second requirement - causal nexus - can be established through a showing that: 1) the party's actions at issue in the case were "'actions under' a federal officer"; and 2) there was a causal connection between those actions and the plaintiff's claims. Id. (citing Durham, 445 F.3d at 1251).

> [T]he "hurdle erected by [the causal-connection] requirement is quite low." Isaacson [v. Dow Chem. Co.], 517 F.3d [129,] 137 [(2d Cir. 2008)]; see also Maryland v. Soper, 270 U.S. 9, 33, 46 S. Ct. 185, 70 L. Ed. 449 (1926) ("[T]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."). The [defendants] need show only that the challenged acts "occurred because of what they were asked to do by the Government." Isaacson, 517 F.3d at 137. . . .
>
> . . . Although the federal officer removal statute is not limitless, "[t]he words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'" Watson [v. Philip Morris Cos.], 551 U.S. [142,] 147, 127 S. Ct. 2301 [(2007)] (quoting Colorado v. Symes, 286 U.S. 510, 517, 52 S. Ct. 635, 76 L. Ed. 1253 (1932)). For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or

tasks of the federal superior." Id. at 152, 127
S. Ct. 2301. The "relationship typically involves
'subjection, guidance, or control,'" but it must
go beyond simply complying with the law, even if
the laws are "highly detailed" and thus leave the
entity "highly regulated." Id. at 151-53, 127 S.
Ct. 2301 (citation omitted). Thus, "[t]he
assistance that private contractors provide
federal officers [must go] beyond simple
compliance with the law and help[] officers
fulfill other basic governmental tasks." Id. at
153, 127 S. Ct. 2301.

Id. at 1244-45 (some alterations in Goncalves).

The required causal nexus can also be established by

showing that the defendant's actions were connected to or

associated with acts under color of a federal office. DeFiore,

85 F.4th at 557 n.6. In DeFiore, the Ninth Circuit stated:

We note that in 2011 Congress amended
§ 1442(a)(1) to allow removal by federal officers
(and persons acting under them) of suits "for or
relating to any act under color of such
office . . . ." 28 U.S.C. § 1442(a)(1); see
Removal Clarification Act of 2011, Pub. L.
No. 112-51, § 2(b)(1)(A), 125 Stat. 545.
Previously, the statute allowed for removal of
suits "for any act under color of such office."
By so amending the statute, "Congress broadened
federal officer removal to actions, not just
**causally** connected, but alternatively **connected**
or **associated,** with acts under color of federal
office." Latiolais v. Huntington Ingalls, Inc.,
951 F.3d 286, 292 (5th Cir. 2020) (en banc)
(emphasis in original); cf. Morales v. Trans
World Airlines, Inc., 504 U.S. 374, 383, 112 S.
Ct. 2031, 119 L. Ed. 2d 157 (1992) (stating that
the "ordinary meaning" of "relating to" "is a
broad one — 'to stand in some relation; to have
bearing or concern; to pertain; refer; to bring
into association with or connection with'")
(quoting Black's Law Dictionary 1158 (5th ed.
1979)). We read our "causal nexus" test as

30

> incorporating the "connected or associated with"
> standard reflected in Congress's 2011 amendment
> and the Supreme Court's decisions. See Goncalves,
> 865 F.3d at 1244-45.

Id. (emphases in DeFiore).

Hickam Communities argues a causal nexus exists
because the federal government leases land to Hickam
Communities, and Hickam Communities is required to obtain water
for the leased land from the Navy. Hickam Communities argues
some of its tenants are military personnel, and therefore it
assists or helps the federal government by providing housing to
those persons. According to Hickam Communities, there is a
causal nexus between that assistance and the Jabours' claims
because the Jabours allege they were injured because of the
contaminated water that Hickam Communities obtained from the
Navy's water system, and the contamination originated from Red
Hill, a Navy facility. [Mem. in Opp. at 20-22.] This Court
rejects Hickam Communities' argument because Hickam Communities
has failed to present any evidence showing the requisite
"subjection, guidance, or control" by a federal officer. See
Watson, 551 U.S.at 151 (citation and quotation marks omitted).

In light of Hickam Communities' failure to establish
the causal nexus requirement, it is not necessary to address the
colorable defense requirement. This Court concludes that Hickam
Communities improperly removed this case based on federal

officer removal jurisdiction. However, remand is not required because the case was properly removed based on diversity jurisdiction, pursuant to Section 1332(a)(1), and pursuant to CAFA.

**CONCLUSION**

For the foregoing reasons, the Jabours' Motion for an Order of Remand, filed February 5, 2024, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 20, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LONNIE G. JABOUR, ET AL. VS. HICKAM COMMUNITIES LLC; CV 24-00001 LEK-KJM; ORDER DENYING PLAINTIFFS' MOITON FOR AN ORDER OF REMAND**