UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LONNIE G. JABOUR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND SONIA M. JABOUR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>        Plaintiffs,<br><br>    vs.<br><br>HICKAM COMMUNITIES, LLC,  DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIV. NO. 24-00001 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023**

Before the Court is Defendant Hickam Communities,

LLC's ("Hickam Communities") Motion to Compel Arbitration and to

Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023

("Motion"), filed on January 24, 2024. [Dkt. no. 7.] Plaintiffs

Lonnie G. Jabour and Sonia M. Jabour, individually and on behalf

of all other similarly situated ("the Jabours") filed their

memorandum in opposition on February 9, 2024, and Hickam

Communities filed its reply on June 7, 2024. [Dkt. nos. 12, 25.]

The Court finds this matter suitable for disposition without a

hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice

for the United States District Court for the District of Hawaii

("Local Rules"). Hickam Communities' Motion is hereby granted insofar as the Jabours are ordered to arbitrate their individual claims, and all claims in this case are stayed. The Motion is denied as to Hickam Communities' request for dismissal.

<u>**BACKGROUND**</u>

The Jabours filed a complaint in the State of Hawai`i Circuit Court of the First Circuit ("state court") on November 17, 2023, and the case was removed to this district court on January 4, 2024. [Notice of Removal, filed 1/4/24 (dkt. no. 1), Exh. A (Complaint).] Hickam Communities argued jurisdiction exists pursuant to Title 28 United States Code Section 1332(a) and the Class Action Fairness Act of 2005 ("CAFA"), Title 28 United States Code Section 1332(d). [Notice of Removal at § III.] On February 5, 2024, the Jabours filed a Motion for an Order of Remand, [dkt. no. 11,] and that motion was denied in an order filed on May 20, 2024. [Dkt. no. 20.[1]]

I.   <u>**Relevant Allegations of the Complaint**</u>

The Jabours resided in a rental housing unit that "was owned, operated, managed and/or leased by" Hickam Communities. [Complaint at ¶¶ 5-6.] Hickam Communities "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i pursuant to agreements with" the United States

---

[1] The May 20, 2024 order is also available at 2024 WL 2272715.

2

Department of the Navy ("the Navy"). [Id. at ¶ 31.] These agreements are part of

> a public-private venture to make productive use of residential housing previously utilized as a military housing community. Under the public-private venture, federal lands are leased to Defendants who then lease residences to private consumers, including the Plaintiffs. The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to Defendants' control.

[Id. at ¶ 32.] Under the leases, Hickam Communities had a duty to provide potable water to its tenants, and the tenants had the duty to pay for the utilities included with their homes. [Id. at ¶¶ 33-34.]

The Jabours argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Hickam Communities sold to them as part of the utilities included in the lease of their home. See id. at ¶ 4. The Jabours allege that, because of the contamination of the water, they "have been constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

On November 20, 2021, the Navy reported that almost 14,000 gallons of a mixture of fuel and water were released from Red Hill's fire suppression system. [Id. at ¶ 26.] The State of Hawai`i Department of Health ("DOH") found that "the November

2021 fuel release 'caused the Red Hill Shaft, a drinking-water source for the U.S. military, to be seriously contaminated with fuel.'" [Id. at ¶ 26 & n.19 (emphasis omitted) (quoting DOH Hearing's Officer's Proposed Decision and Order, Findings of Fact, and Conclusions of Law, dated 12/27/21 ("12/27/21 DOH FOF/COL") at ¶ 36).[2]] The DOH found that "'[t]he water contamination was widespread and not unique to any one person.'" [Id. at ¶ 27.a & n.21 (quoting 12/27/21 DOH FOF/COL at ¶ 41).] In response to the November 2021 fuel release, the Red Hill Shaft, all tanks at Red Hill, the `Aiea-Hālawa Shaft, and three City and County of Honolulu Board of Water Supply wells were shut down. [Id. at ¶ 29.]

The Jabours argue that, because of prior fuel leaks/releases at Red Hill and because of Hickam Communities' relationship with the Navy, Hickam Communities knew or should have known about the risk of contamination to the water that Hickam Communities provided to the Jabours under their lease.

---

[2] The 12/27/21 DOH FOF/COL was issued in the contested case brought by the Navy to challenge portions of DOH's December 6, 2021 emergency order. The proposed decision and order was adopted, as amended, as DOH's final decision and order. See Wai Ola Alliance, et al. v. U.S. Dep't of the Navy, et al., CV 22-00272 LEK-RT ("Wai Ola"), Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed 12/7/23 (dkt. no. 102), Exh. D (12/6/21 emergency order), Exh. E (DOH final decision and order); Wai Ola, the plaintiffs' request for judicial notice, filed 12/22/23 (dkt. no. 108), Exh. A (12/27/21 DOH FOF/COL).

Further, Hickam Communities failed to warn the Jabours about the risk that fuel leaks contaminated the water provided their homes. Hickam Communities did not test the water it provided to the Jabours to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Hickam Communities failed to warn its tenants in timely manner, which resulted in the Jabours using and drinking the contaminated water. [Id. at ¶¶ 36-37.] The Jabours allege the water crisis is ongoing because the water is still being tested to determine if it is safe for human consumption. [Id. at ¶ 38.] They allege that, as a result of Hickam Communities' conduct, they "suffered economic injury and damages, including but not limited to lease termination fees, relocation expenses, rent, and the loss of personal possessions." [Id. at ¶ 41.] In addition, the Jabours allege their damages "include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention, damage to personal property, and property management and maintenance services." Id. at ¶ 53; see also id. at ¶¶ 100, 112 (similar).

The Jabours are attempting to pursue their case as a class action brought on behalf of:

> All persons who are citizens of Hawai`i at the time of filing of this suit, and who, on or after November 20, 2021, reside or have resided in a

5

> housing unit entitled to receive uncontaminated
> potable water sold or distributed by Defendants
> in housing units owned, leased or operated by
> Hickam and who, for some period of time since
> November 20, 2021, did not receive such
> uncontaminated potable water [("the Class")].

[Id. at ¶ 11.] The Class does not include "[i]ndividuals suffering from physical injuries severe enough to require professional medical assistance." [Id.] The Jabours also propose a subclass consisting of: "All persons in the above Class who entered a lease contract with Defendant Hickam, and/or made payments for or towards lease rent on a housing unit entitled to receive uncontaminated potable water sold or distributed by Defendant Hickam [('the Subclass')]." [Id. at ¶ 12.]

The Jabours allege the requirements of numerosity, commonality, typicality, and adequacy are met as to the Class and the Subclass. [Id. at ¶¶ 13-16.] They also allege Hickam Communities' conduct is generally applicable to the Class, and the common issues related to liability and causation dominate over the individual issues of extent of economic harm. [Id. at ¶¶ 17-19.]

The Jabours assert the following claims on behalf of the Class, unless stated below: negligence ("Count I"); strict liability ("Count II"); a claim alleging Hickam Communities has a duty to provide medical monitoring for conditions that may develop because of the contaminated water ("Count III"); private

nuisance ("Count IV"); an unfair and deceptive trade practices claim by the Subclass, pursuant to Hawai`i Revised Statutes Section 480-2 ("Count V"); a breach of the implied warranty of habitability claim by the Subclass ("Count VI"); a trespass claim by the Subclass ("Count VII"); a breach of contract claim by the Subclass ("Count VIII"); and a claim by the Subclass alleging violations of the Landlord Tenant Code, Hawai`i Revised Statutes Chapter 521 ("Count XI"). [Id. at pgs. 16-30.] The Jabours seek: certification of the Class and the Subclass; general, special, and consequential damages, as well as treble and punitive damages; a medical monitoring program; attorney's fees and costs; disgorgement of profits; prejudgment interest; injunctive relief; and any other appropriate relief. [Id. at pgs. 30-31.]

## II.  **The Instant Motion**

Hickam Communities argues the Jabours' lease contains a provision making mediation and/or arbitration mandatory, and the Jabours have not complied with that provision. Further, because the provision does not mention class arbitration, the Jabours cannot pursue class claims in the arbitration. Hickam Communities therefore argues this Court should compel the Jabours to arbitrate their individual claims. [Motion, Mem. in Supp. at 1.]

Lonnie Jabour entered into a Residential Lease Agreement with Hickam Communities for a term from August 1, 2023 to July 31, 2024, continuing on a month-to-month basis thereafter ("Lease"). [Motion, Declaration of Phillip Carpenter ("Carpenter Decl."),[3] Exh. B (Lease).] The Jabours argues the Lease is an insufficient basis for the Motion because it is not the lease that was in effect during the relevant period. [Mem. in Opp. at 4.] However, the Lease was in effect when the Jabours filed their Complaint on November 17, 2023, and the Complaint alleges the water crisis is ongoing. See Complaint at ¶ 38. This Court will therefore consider the Lease for purposes of the instant Motion.

Sonia Jabour was identified as one of the other authorized occupants of the leased premises. [Carpenter Decl., Exh. B at PageID.133.] The Lease states:

> All disputes between the parties of this Agreement shall be resolved by mediation and/or binding arbitration in accordance with the terms and provisions of the Resident Guide. The prevailing party in binding arbitration and/or other legal process shall be entitled to recover its reasonable attorneys' fees and costs incurred in relation to the dispute from the non-prevailing party.

---

[3] Phillip Carpenter ("Carpenter") is the Chief Operating Officer of Lendlease (US) Public Partnerships Holdings LLC ("Lendlease"), which is the majority owner of Hickam Communities. [Carpenter Decl. at ¶¶ 1, 5.]

[Id. at PageID.137, § 19.]

Hickam Communities argues that, because the Lease does not reference state law, there is a strong presumption that the Federal Arbitration Act ("FAA") applies to the arbitration agreement and to any arbitration conducted pursuant thereto. Even without the presumption, the FAA would still apply because it preempts contrary state arbitration law. Thus, Hickam Communities contends this Court must apply the FAA and must determine whether there was a valid arbitration agreement and whether the dispute falls within the scope of the agreement. [Motion, Mem. in Supp. at 4-5.] Hickam Communities argues this case is covered by an unambiguous, enforceable agreement to arbitrate or mediate, and therefore this Court should dismiss the Jabours' claims or stay the case. [Id. at 8.] Hickam Communities subsequently acknowledged that, under Smith v. Spizzirri, 601 U.S. 472, 144 S. Ct. 1173 (2024), a district court is required to stay claims that it compels be arbitrated. Hickam Communities therefore amends its request in the Motion and asks that this Court compel the arbitration of the Jabours' individual, non-class claims and stay the corresponding claims in this case. However, Hickam Communities argues the Jabours' class claims must be dismissed because there is no class representative. [Reply at 1 n.1.]

**STANDARD**

Title 9 United States Code Section 2 states:

A written provision in any maritime transaction or a contract evidencing **a transaction involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

(Emphasis added.) The term "involving commerce" is interpreted broadly.

The Supreme Court considered the scope of Section 2 in <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). The Court had previously concluded that the FAA preempts state law, and in <u>Allied-Bruce</u> it considered the breadth of the FAA's reach, as set forth in Section 2. <u>Id.</u> at 272-73, 115 S. Ct. 834. The Court examined the phrase "a contract evidencing a transaction involving commerce" in two steps. First, the Court noted that the words "'involving commerce' . . . are broader than the often-found words of art 'in commerce.'" <u>Id.</u> at 273, 115 S. Ct. 834. The Court held that the phrase "involving commerce" is "the functional equivalent of" the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." <u>Id.</u> at 273-74, 115 S. Ct. 834. Second, the Court considered the language "evidencing a transaction" involving commerce. <u>Id.</u> at 277, 115 S. Ct. 834. The Court read this phrase broadly, holding that the transaction must involve interstate commerce, but that the parties to the transaction need not have contemplated that the transaction had an interstate commerce connection. <u>Id.</u> at 281, 115 S. Ct. 834.

10

> The Court noted in passing in <u>Allied-Bruce</u> that Section 1 of the FAA "defin[ed] the word 'commerce' in the language of the Commerce Clause itself." 513 U.S. at 274, 115 S. Ct. 834; <u>see</u> 9 U.S.C. § 1 ("'[C]ommerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation[.]").

<u>Rogers v. Royal Caribbean Cruise Line</u>, 547 F.3d 1148, 1154 (9th Cir. 2008) (alterations in <u>Rogers</u>).

If the FAA applies to an arbitration agreement, this Court determines whether an issue is arbitrable

> "by applying the federal substantive law of arbitrability,' <u>Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc.]</u>, 473 U.S. [614,] 626, 105 S. Ct. 3346 [(1985),] "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." <u>Cape Flattery [Ltd. v. Titan Maritime, LLC]</u>, 647 F.3d [914,] 921 [(9th Cir. 2011)] (internal quotation marks omitted).

<u>Brennan v. Opus Bank</u>, 796 F.3d 1125, 1129 (9th Cir. 2015) (some brackets omitted).

## **DISCUSSION**

## I.   **Whether the FAA Applies**

This Court first turns to the Jabours' arguments that Hickam Communities has not shown the Lease is "'a contract evidencing a transaction involving [interstate] commerce,'"

11

[Mem. in Opp. at 1 n.2 (alteration in Mem. in Opp.) (quoting 9 U.S.C. § 2),] and that the FAA does not apply to a residential lease, [id. at 1-2 n.2 (citing cases)]. The Jabours' argument that the FAA does not apply to residential leases is based upon cases involving discrete real estate transactions. However, these cases are distinguishable because Hickam Communities manages thousands of units. See Notice of Removal at pg. 13 (stating there were "approximately 2,495 units" in the community managed by Hickam Communities "that were allegedly impacted by the Navy's contaminated water"). Further, as noted supra, "a transaction involving commerce" is interpreted broadly. See Allied-Bruce, 513 U.S. at 273-74, 281.

This Court is persuaded by the analysis of the United States District Court for the Eastern District of Louisiana, which relied upon Congress's broad exercise of its commerce power in the FAA when the district court rejected a plaintiff tenant's argument that the FAA did not apply to her lease with defendant – an entity that managed multiple properties with thousands of units:

> Plaintiff's argument is essentially that the rental market for multi-unit apartment buildings is beyond Congress's regulatory reach. This is a proposition the Supreme Court has summarily rejected:
>
>> The rental of real estate is unquestionably such an activity [affecting interstate commerce]. We need not rely on the

12

> connection between the market for
> residential units and "the interstate
> movement of people," to recognize that the
> local rental of an apartment unit is merely
> an element of a much broader commercial
> market in rental properties. The
> congressional power to regulate the class of
> activities that constitute the rental market
> for real estate includes the power to
> regulate individual activity within that
> class.
>
> Russell v. United States, 471 U.S. 858, 862
> (1985) . . . .

Turnipseed v. APMT, LLC, CIVIL ACTION No. 18-5187, 2018 WL

5977889, at *1-2 (E.D. La. Nov. 14, 2018) (brackets in

Turnipseed). Similarly, a district court in the Southern

District of California stated:

> "Real estate rental is an activity that affects
> interstate commerce as a matter of law." Cho v.
> Casnak LLC, No. 222CV04642JLSAFM, 2022 WL
> 16894869, at *3 (C.D. Cal. Sept. 7, 2022) (citing
> Russell v. United States, 471 U.S. 858, 862
> (1985)) (finding that the rental of both
> commercial and residential real estate is an
> economic activity that affects interstate
> commerce and that the FAA governs rental leases).
> Because real estate rental involves interstate
> commerce, the FAA's reach applies to real estate
> leases such as the Lease at issue here. See Hall
> St. Assocs., L.L.C. [v. Mattel, Inc.], 552 U.S.
> [576,] 590 [(2008)]; Russell, 471 U.S. at 862;
> Cho, 2022 WL 16894869, at *3. The Court is not
> persuaded by Plaintiffs' mistaken argument that
> only commercial real estate rentals are governed
> by the FAA, nor by their citations to cases that
> involve one-time real estate sales and not
> leases. See Russell, 471 U.S. at 862 (finding the
> rental of real estate unquestionably affects
> commerce, and the local rental of an apartment
> unit is a part of that broad commercial market in
> rental properties); A-1 A-Lectrician, Inc. v.

13

> Commonwealth Reit, 943 F. Supp. 2d 1073, 1078 (D.
> Haw. 2013), *amended* (June 27, 2013)
> (distinguishing cases involving one-time real
> estate sales as inapplicable to whether the FAA
> governs real estate leases).

Brooks v. Greystar Real Est. Partners, LLC, Case No. 23cv1729-
LL-VET, 2024 WL 3489205, at *5 (S.D. Cal. July 19, 2024) (some
citations omitted).

In light of the broad interpretation of "a transaction
involving commerce" and the fact that the Lease is an example of
hundreds, if not thousands, of leases for residences in the
community managed by Hickam Communities, this Court concludes
that the Lease is "a contract evidencing a transaction involving
commerce," and therefore the FAA applies.

## II.  **Whether There Is an Arbitrable Claim**

Because the FAA applies to the Lease, this Court
determines whether an issue is arbitrable "'by applying the
federal substantive law of arbitrability,' Mitsubishi Motors,
473 U.S. at 626, 105 S. Ct. 3346 absent clear and unmistakable
evidence that the parties agreed to apply non-federal
arbitrability law." Brennan, 796 F.3d at 1129 (some citations
and internal quotation marks omitted). The arbitration provision
in the Lease does not reference Hawai`i law. Further, the
relevant provision in the Hickam Communities Resident Guide,
which is referred to in the Lease, does not refer to Hawai`i
law. Federal law is therefore applicable because there is no

14

clear and unmistakable indication that the parties intended to apply Hawai`i law regarding arbitrability. This district court has stated:

> "The FAA 'mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).
>
> Normally, "in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).
>
> To determine whether a valid agreement to arbitrate exists under the FAA, a court applies "ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "[A]greements to arbitrate [may] be invalidated by generally applicable [state-law] contract defenses" to enforceability such as "fraud, duress, or unconscionability." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (20[1]1) (citations and quotation marks omitted); see Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008) ("This requires [a court] to consider what is unconscionable and unenforceable under . . . state law.").
>
> "The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists," and if met, the burden then "shifts to the opposing party to present evidence on its defenses to the arbitration agreement." Siopes v. Kaiser Found. Health Plan, Inc., 130 Haw. 437, 446, 312 P.3d

869, 878 (2013) (citations and quotation marks
omitted).

. . . .

Under Hawaii law, three elements are
required to prove a valid arbitration agreement:
"(1) it must be in writing; (2) it must be
unambiguous as to the intent to submit disputes
or controversies to arbitration; and (3) there
must be bilateral consideration." Douglass v.
Pflueger Haw., Inc., 110 Haw. 520, 531, 135 P.3d
129, 140 (2006). "With respect to the second
requirement, 'there must be a mutual assent or a
meeting of the minds on all essential elements or
terms to create a binding contract.'" Siopes, 130
Haw. at 447, 312 P.3d at 879 (emphasis omitted)
(quoting Douglass, 110 Haw. at 531, 135 P.3d at
140). "The existence of mutual assent or intent
to accept is determined by an objective
standard." Id. Under the third element, bilateral
consideration exists where there is mutual assent
to arbitrate — that is, where the parties both
agree to "forego their respective rights to a
judicial forum, given the delay and expense which
results from the use of the federal and state
court systems, in order to benefit from the
resulting time and cost savings" of arbitration.
Brown v. KFC Nat'l Mgmt. Co., 82 Haw. 226, 239-
40, 921 P.2d 146, 159-60 (1996) (citations and
quotation marks omitted).

Loftus v. H&R Block, CIV. NO. 20-00568 JMS-KJM, 2021 WL 4437491,

at *1-2 (D. Hawai`i Sept. 27, 2021) (alterations in Loftus)

(footnote omitted).

The Lease is in writing. It unambiguously states all

disputes between the parties to the lease "shall be resolved by

mediation and/or binding arbitration." See Carpenter Decl.,

Exh. B (Lease) at PageID.137, § 19.

16

The fact that the Lease refers to "mediation and/or binding arbitration" does not mean a lack of intent to submit to arbitration.[4] This Court previously examined such language and concluded that the arbitration agreement was unenforceable, not because a party could elect either arbitration or mediation, but because the defendants "reserved the right to alter its terms without any notice to or input from" the plaintiff by unilaterally changing the body conducting the arbitration proceeding. See Johnson v. F/V Kilauea, CIVIL 15-00065 LEK-KJM, 2016 WL 1611580, at *3 (D. Hawai`i Apr. 22, 2016).[5]

---

[4] The Jabours raise their ambiguity argument in the context of their position that the arbitration agreement is unenforceable and should be invalidated. See Mem. in Opp. at 4-10. However, their ambiguity argument is more appropriately addressed in the context of the issue of whether the contract is ambiguous as to whether the parties intended to submit to arbitration.

[5] The agreement in Johnson stated:

> Any dispute(s) that might arise out of any terms or conditions relating to or contained in this Captain Employment Agreement shall be settled by mediation and/or binding arbitration under the Rules of the Hawaii Dispute Prevention & Resolution (DPR)**, or other recognized arbitration body selected by the Owner.** The prevailing party in any arbitration hereunder shall be awarded reasonable attorney fees and costs, expert and non-expert witness costs and all other costs and expenses incurred directly or indirectly in connection with said arbitration. The undersigned parties understand and agree that any such dispute shall be mediated and arbitrated in Honolulu, Hawaii pursuant to the rules of DPR.

(. . . continued)

17

In the instant case, the Lease, even when read with
the Resident Guide, does not specify procedures or rules to be
applied in the arbitration. However, this district court has
rejected the argument that the lack of an expressed agreement as
to all terms means that there is no unambiguous intent to submit
to arbitration. Only agreement on essential terms is required.

> Travelers argues, in essence, that the agreement
> lacks definiteness — that is, the parties did not
> agree on all essential terms of the agreement,
> such as rules to govern the arbitration or to
> determine the scope of discovery, the issuance of
> subpoenas, and the selection of arbitrators.
>
> The court finds, however, that these missing
> terms are not essential and thus need not be in
> writing to create a binding arbitration
> agreement. And in so finding, the court agrees
> with the many other courts finding that such
> missing terms from an FAA-governed arbitration
> agreement are non-essential. See Wework Cos.,
> Inc. v. Zoumer, 2016 WL 1337280, at *5 (S.D.N.Y.
> Apr. 5, 2016) (holding that although the
> agreement to arbitrate was "admittedly terse," it
> was valid because "the language indicates that
> the parties agreed to be bound" and "[t]he lack
> of specific terms governing the arbitration's
> procedure does not invalidate the agreement,
> considering that the FAA provides an objective
> method to fill gaps in arbitration agreements")
> (citing 9 U.S.C. §§ 5, 7); Hojnowski v. Buffalo
> Bills, Inc., 995 F. Supp. 2d 232, 236 (W.D.N.Y.
> 2014) (finding no authority to suggest that the
> rules and procedures governing arbitration are
> essential terms); Gerena v. Neurological Surgery,
> P.C., 2016 WL 3647782, at *4 n.4 (E.D.N.Y.
> June 9, 2016) (finding the lack of the following
> terms to be "non-essential" to valid agreement to
> arbitrate: the method for selecting an

_____

2016 WL 1611580, at *3 (emphasis added).

18

arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held); <u>Daskalakis v. Forever 21, Inc.,</u> 2016 WL 4487747, at *4-5 (E.D.N.Y. Aug. 25, 2016) (rejecting argument that arbitration agreement is invalid for lack of definiteness in agreement that did not identify the arbitral forum or location, the identity of or method for selecting an arbitrator, the arbitration procedures, or the choice of law); <u>Lockard v. EYM King of Kansas, LLC,</u> 2017 WL 4012203, at *5 (D. Kan. Sept. 12, 2017) (finding lack of arbitral procedures non-essential, and thus not invalidating the arbitration agreement); <u>Pingel v. Gen. Elec. Co.,</u> 2014 WL 7334588, at *10 (D. Conn. Dec. 19, 2014) (finding that rules of arbitration "are not essential terms, which if absent from the arbitration agreement, would render the agreement void") (emphasis omitted); <u>Henry v. New Orleans Louisiana Saints L.L.C.,</u> 2016 WL 2901775, at *10 (E.D. La. May 18, 2016) ("The lack of specific terms governing the arbitration's procedure does not invalidate the arbitration agreement."); <u>Hooters of Am., Inc. v. Phillips,</u> 39 F. Supp. 2d 582, 606-07 (D.S.C. 1998) ("In the orthodox situation the content of arbitration rules would not constitute a material term of the agreement because such rules would address merely procedural matters of the forum.").

<u>Queen's Med. Ctr. v. Travelers Cas. & Sur. Co. of Am.,</u> CIV. NO. 17-00361 JMS-RLP, 2018 WL 1719703, at *4 (D. Hawai`i Apr. 9, 2018) (alteration in <u>Queen's</u>). Although the arbitration provision in the Lease could have provided more specific terms, the provision evinces an agreement on the essential terms.

Further, bilateral consideration exists because both parties agree to submit to mediation and/or arbitration. However, the Jabours argue that the Lease references remedies

that constitute Hickam Communities' reservation of its right to seek judicial remedies, rendering Hickam Communities' agreement to forgo judicial remedies illusory. [Mem. in Opp. at 9-10.] The references that the Jabours rely upon include:

-the Mold & Mildew Addendum, which states: "A default under the terms of this Addendum shall be deemed a material default under the terms of the [Residential Leasing Agreement], and Landlord shall be entitled to exercise all rights and remedies at law or in equity." [Carpenter Decl., Exh. B (Lease) at PageID.142 (second page of Mold & Mildew Addendum), Violation Addendum;]

-multiple reservations of Hickam Communities' right to seek eviction; [id. at PageID.133, § 2; PageID.134, § 4(b); PageID.135-36, §§ 7-8, 10, 12, 13;]

-Hickam Communities' reservation of rights to assert claims for monetary damages; [id. at PageID.136, § 10;]

-its reservation of rights to recover costs; [id. at PageID.136, § 12;] and

-its reservation of rights to "bring an action or proceeding for waste or for breach of contract for damage suffered by the Resident's willful negligent failure to comply with the Resident's obligations to maintain the Premises under this Agreement or the [Hickam Communities] Resident Guide," [id.]

In Douglass v. Pflueger Hawaii, Inc., the Hawai`i Supreme Court noted that, "although the arbitration provision in this case, on its face, is supported by bilateral consideration, we conclude that the reservation of rights language contained in the acknowledgment form renders the purported arbitration agreement illusory. Consequently, without 'mutuality of obligation,' the [bilateral consideration] requirement is also

not met." 110 Hawai`i 520, 535, 135 P.3d 129, 144 (2006), *as corrected* (May 30, 2006) (quoting Trumbull v. Century Marketing Corp., 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998)).

It is a close question whether other discussions of Hickam Communities' rights in the Lease render illusory the agreement to forego judicial recourse in favor of mediation and/or arbitration. Some of the rights discussed, like damages or recovery of costs, could be sought in mediation or arbitration and do not necessarily imply a reservation of judicial remedies. See, e.g., Carpenter Decl., Exh. B (Lease) at PageID.136, §§ 10, 12. The references to eviction, on the other hand, imply the use of a judicial process, see, e.g., id. at PageID.133, § 2, but the reservations of rights in the Lease are not as clear as the reservation in Douglas. The purported arbitration agreement in Douglas was contained in an employee handbook, and the plaintiff signed an acknowledgment recognizing the fact that the handbook was not an employment contract and could be changed by the employer at any time. Douglas, 110 Hawai`i at 522, 135 P.3d at 131. In contrast, the arbitration/mediation provision here is contained in the Lease, and Hickam Communities did not reserve an unfettered right to change the Lease.

Further, to the extent that some of the Lease's provisions imply the use of a judicial process, such as the

eviction provisions, those provisions are severable from the arbitration provision. <u>See</u> <u>Brown</u>, 82 Hawai`i at 245-46, 921 P.2d at 165-66 (holding that the arbitration agreement was severable from the remaining portions of the writing, which was an employment application that included a disclaimer stating the application was not an employment contract).

This Court therefore concludes that the Lease, a written contract, evidences an unambiguous intent to submit disputes to arbitration or mediation and is supported by bilateral consideration. <u>See</u> <u>Douglass</u>, 110 Hawai`i at 531, 135 P.3d at 140. Thus, there is an enforceable arbitration agreement unless the Jabours establish a contract defense invalidating the arbitration agreement. <u>See</u> <u>AT&T Mobility</u>, 563 U.S. at 339.

## III. <u>Unconscionability</u>

The Jabours argue that the arbitration provision is unenforceable because it is unconscionable. [Mem. in Opp. at 10.]

> "Unconscionability encompasses two principles: one-sidedness and unfair surprise." <u>Balogh v. Balogh</u>, 134 Hawai`i 29, 41, 332 P.3d 631, 643 (2014); <u>see also</u> <u>Lewis [v. Lewis]</u>, 69 Haw. [497,] 502, 748 P.2d [1362,] 1366 [(1988)] ("It is apparent that two basic principles are encompassed within the concept of unconscionability, one-sidedness and unfair surprise.").

> These principles are also characterized as procedural and substantive unconscionability. <u>See</u> <u>Balogh</u>, 134 Hawai`i at 41, 332 P.3d at 643.

22

Procedural unconscionability, or unfair surprise, focuses on the "process by which the allegedly offensive terms found their way into the agreement." 7 Joseph M. Perillo, Corbin on Contracts § 29.1 (Rev. ed. 2002). Substantive unconscionability, in contrast, focuses on the content of the agreement and whether the terms are one-sided, oppressive, or "unjustly disproportionate." Balogh, 134 Hawai`i at 41, 332 P.3d at 643; Perillo, *supra*, § 29.1.

Narayan v. The Ritz-Carlton Dev. Co., 140 Hawai`i 343, 350-51, 400 P.3d 544, 551-52 (2017) (footnote omitted). The Jabours argue the arbitration provision in the Lease is both procedurally and substantively unconscionable. [Mem. in Opp. at 12-14.]

A.   **Procedural Unconscionability**

Procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 828 (1988). Courts consider such factors as "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power" between the parties. Id.; see also Perillo, *supra*, § 29.4 (noting that the following elements factor into a determination of procedural unconscionability: superior bargaining power, lack of meaningful choice for the weaker party, form contracts that are "heavily weighted in favor of one party and offered on a take it or leave it basis," and where "freedom of contract is exploited by a stronger party").

Procedural unconscionability often takes the form of adhesion contracts, where a form contract is created by the stronger of the contracting

> parties, and the terms "unexpectedly or
> unconscionably limit the obligations and
> liability of the weaker party." Nacino v. Koller,
> 101 Hawai`i 466, 473, 71 P.3d 417, 424 (2003)
> (quoting Leong v. Kaiser Found. Hosp., 71 Haw.
> 240, 247, 788 P.2d 164, 168 (1990)). Although
> adhesion contracts are not unconscionable *per se*,
> they are defined by a lack of meaningful choice
> and, thus, often satisfy the procedural element
> of unconscionability.

Id. at 351, 400 P.3d 544, 552.

In the instant case, Hickam Communities had greater bargaining power, and the Lease is a form document. The Jabours state they believed that they had no choice but to accept the offered lease on a take-it-or-leave-it basis. See Mem. in Opp., Declaration of Lonnie G. Jabour ("Lonnie Jabour Decl.") at ¶ 10 ("Because housing is essential but in short supply in Hawaii, and Hickam [Communities] controls a large amount of housing, I didn't feel I had any meaningful choice but to accept Hickam [Communities]'s take it or leave it terms if I wanted housing."). While the point is well-taken, the Hawai`i Supreme Court "has noted that inequality of bargaining power, **in and of itself,** does not transform an agreement to arbitrate into an unenforceable contract of adhesion.'" Narayan, 140 Hawai`i at 351 n.6, 400 P.3d at 552 n.6 (ellipsis, citation, and internal quotation marks omitted) (emphasis in Narayan).

The Jabours also complain that the Lease and other papers that came with the Lease were confusing because of the

24

multiple parts and overall length. [Lonnie Jabour Decl. at ¶ 6.] However, the main Lease document is less than ten pages long, and the dispute provision is in a separate section that is clearly numbered and titled. See Carpenter Decl., Exh. B (Lease) at PageID.132-40. The arbitration provision of the Lease does not present the type of unfair surprise necessary to establish procedural unconscionability. See, e.g., Narayan, 140 Hawai`i at 351, 400 P.3d at 552 ("there is an element of unfair surprise in that the arbitration clause is buried at the end of the declaration and is ambiguous when read in conjunction with the other controlling documents"). Thus, the Jabours have failed to prove procedural unconscionability.

### B.  __Substantive Unconscionability__

Substantive unconscionability focuses on the one-sidedness of the agreement. Lewis, 69 Haw. at 502, 748 P.2d at 1366; Balogh, 134 Hawai`i at 41, 332 P.3d at 643; Earl M. Jorgensen Co. v. Mark Constr., Inc., 56 Haw. 466, 474, 540 P.2d 978, 984 (1975); see also Gillman, 537 N.Y.S.2d 787, 534 N.E.2d at 829 ("This question entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged."). Here, the Homeowners argue that the arbitration clause is substantively unconscionable because it eliminates rights to punitive, exemplary, and consequential damages, precludes discovery, imposes a confidentiality requirement, and imposes a one-year statute of limitations. We agree, and affirm our earlier decision that portions of the arbitration clause are substantively unconscionable.

25

Id. at 352, 400 P.3d at 553 (footnote omitted). The types of provisions that rendered the arbitration clause substantively unconscionable in Narayan are not present in the Lease.

The Jabours argue the arbitration provision is substantively unconscionable because Hickam Communities reserved the right to pursue judicial remedies and because the Jabours may have to pay costs in arbitration that they would not have been required to pay in a judicial action. [Mem. in Opp. at 13.] As stated *supra*, it is a close question whether Hickam Communities impermissibly reserved judicial remedies for itself. However, because any such provisions are severable from the arbitration provision, this Court concludes that they do not warrant a finding of substantive unconscionability.

As to their costs of arbitration argument, the Jabours assert that: "Forcing costs of arbitration on a party when it would be prohibitively expensive for that party, such as the arbitration provisions here attempt to do, is sufficient reason alone to hold the arbitration agreement unconscionable as impermissibly one-sided." [Id. at 14 (citing Gabriel v. Island Pac. Acad., Inc., 140 Haw. 325, 338, 400 P.3d 526, 539 (2017)).] In Gabriel, the Hawai`i Supreme Court held that an arbitration cost-splitting requirement was substantively unconscionable in favor of the defendant. 140 Hawai`i at 338, 400 P.3d at 539. The plaintiff was a former teacher at the defendant school, and the

26

plaintiff alleged the defendant refused to hire her for the 2014-2015 school year in retaliation for the sexual harassment complaint that she made during the 2013-2014 school year. See id. at 328-29, 400 P.3d at 529-30.

First, Gabriel is distinguishable because the arbitration provision required the parties to split the arbitration costs, and the plaintiff had to pay a deposit **up-front**. See id. at 337, 400 P.3d at 538. In contrast, the arbitration provision in the Lease allows the **prevailing party** in the arbitration to recover reasonable attorney's fees and costs. See Carpenter Decl., Exh. B (Lease) at PageID.137, § 19. In other words, the Jabours are not required to pay arbitration costs unless Hickam Communities prevails. Moreover, the supreme court expressly declined "to adopt a holding that a cost-splitting requirement in arbitration is per se unconscionable and, therefore, unenforceable," and instead it held that "whether cost-splitting in arbitration is unconscionable depends on the facts of each case." Gabriel, 140 Hawai`i at 337, 400 P.3d at 538. Based on the evidence in the record, the supreme court held that it was "unconscionable to require a terminated school teacher to pay, up-front, a deposit amounting to one-quarter to one-third of her former **annual** salary in order to access the arbitral forum." Id. at 337-38, 400 P.3d at 538-39 (emphasis in Gabriel). The Jabours have not presented any

27

evidence that their circumstances are comparable to the facts in <u>Gabriel</u>.

On balance, based on the facts presented, the terms of the arbitration provision in the Lease are not so one-sided as to be substantively unconscionable. Because the Jabours have failed to establish a defense to the enforceability of the arbitration provision, this Court concludes that the arbitration provision is valid and enforceable.

## IV.   <u>Other Authorized Occupants</u>

The Lease is between Lonnie Jabour as the "Resident" and Hickam Communities; and Sonia Jabour is one of the other authorized occupants. <u>See</u> Carpenter Decl., Exh. B (Lease) at PageID.133. To the extent that the Jabours argue Sonia Jabour is not bound by the arbitration clause because she is not a party to the Lease, that argument is rejected.

The Lease states: "Resident agrees and acknowledges that the spouse and any other authorized occupant listed in Section 2 has no independent or separate right under this lease to occupy the Premises." [<u>Id.</u> at PageID.133, § 2.] Any rights that Sonia Jabour had arising from her occupancy of the Premises were dependent upon Lonnie Jabour's rights under the Lease. Further, "[w]hile the FAA requires a writing, it does not require that the writing be signed by the parties." <u>Nghiem v. NEC Elec., Inc.</u>, 25 F.3d 1437, 1439 (9th Cir. 1994) (citation

28

and internal quotation marks omitted). Thus, although Sonia
Jabour did not sign the Lease as a Resident, she is bound by the
arbitration provision in the Lease.

Hickam Communities' Motion is granted insofar as the
Jabours are required to arbitrate their individual claims. The
Jabours' individual claims are stayed, pending the outcome of
the arbitration. See 9 U.S.C. § 3; Smith v. Spizzirri, 601 U.S.
472, 478, 144 S. Ct. 1173, 1178 (2024) ("When a district court
finds that a lawsuit involves an arbitrable dispute, and a party
requests a stay pending arbitration, § 3 of the FAA compels the
court to stay the proceeding.").[6]

## V.   Class Claims

Turning to the claims that the Jabours are bringing on
behalf of the Class and/or the Subclass, this Court notes that
the United States Supreme Court has stated:

> In Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,
> 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605
> (2010), we held that a court may not compel
> arbitration on a classwide basis when an
> agreement is "silent" on the availability of such
> arbitration. Because class arbitration
> fundamentally changes the nature of the
> "traditional individualized arbitration"
> envisioned by the FAA, Epic Systems Corp. v.
> Lewis, 584 U.S. ----, ----, 138 S. Ct. 1612,
> 1623, 200 L. Ed. 2d 889 (2018), "a party may not
> be compelled under the FAA to submit to class

---

[6] Section 3 contains an exception when the party seeking a
stay is default in the arbitration proceeding, but there is no
indication that this exception applies under the circumstances
of this case.

> arbitration unless there is a contractual basis
> for concluding that the party **agreed** to do so,"
> <u>Stolt-Nielsen</u>, 559 U.S. at 684, 130 S. Ct. 1758
> (emphasis in original).

<u>Lamps Plus, Inc. v. Varela</u>, 587 U.S. 176, 178-79, 139 S. Ct. 1407, 1412 (2019) (emphasis in <u>Lamps Plus</u>). Hickam Communities does not seek to compel arbitration of the class claims because the arbitration provision in the Lease is silent as to class arbitration.

Hickam Communities argues in its reply that the class claims should be dismissed because the Jabours cannot be class representatives. <u>See</u> Reply at 14. Because this is a new request that was not raised in the Motion, this Court will not address it. <u>Cf.</u> Local Rule LR7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

This Court stays the class claims in the Complaint because the outcome of the arbitration will affect the litigation of the class claims.

<u>**CONCLUSION**</u>

For the foregoing reasons, Hickam Communities' January 24, 2024 Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as: the Jabours are ORDERED to arbitrate their individual claims; and the Jabours' individual claims and class

claims are STAYED pending the outcome of the arbitration. Hickam Communities' Motion is DENIED as to its request for dismissal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 20, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LONNIE G. JABOUR, ETC., ET AL. VS. HICKAM COMMUNITIES, LLC, ET AL; CV 24-00001 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023**